**CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee,**

v.

**Ervin HOWARD, d/b/a LaFayette Components, Defendant-Appellant.**

No. 82–3047.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1985.

Decided Oct. 29, 1985.

As Amended Nov. 7, and Nov. 13, 1985. Rehearing Denied Dec. 3, 1985.

William K. Bennett and Robert W. Bennett, Bennett, Boehning, Poynter & Clary, Lafayette, Ind., for defendant-appellant.

Lisa Marco Kouba, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for plaintiff-appellee.

Before WOOD and COFFEY, Circuit Judges, and PECK, Senior Circuit Judge.*

COFFEY, Circuit Judge.

The defendant, Ervin Howard appeals a jury verdict on a counterclaim in his favor in the amount of $9,500 rather than the $379,000 Howard claimed. We affirm.

I

This litigation, in federal court under our diversity jurisdiction, arose out of the destruction by fire of the defendant's roof-truss factory in LaFayette, Indiana in January of 1981. After investigating the cause of the fire, the insurer, Continental Casualty Company ("Continental") concluded that the fire had been set by an arsonist, and that the circumstances surrounding the fire indicated that the owner, Howard, was the arsonist, and that the business' financial condition had deteriorated during the past three to four years. Continental initiated a declaratory judgment action in the United States District Court for the Northern District of Indiana to determine its liability under the policy. Howard counterclaimed for the proceeds of the insurance policy covering the factory ("factory policy") and for the value of a truck destroyed in the fire, also insured by Continental under a separate automobile business policy ("automobile policy"). Additionally, Howard sought punitive damages under both policies contending that Continental, "willfully, wantonly, maliciously, oppressively, and in bad faith, refused, without legal cause, to meet its contractual obligations" under the insurance policies.

The district court judge directed a jury verdict in the favor of Continental and on the issue of punitive damages. As to the truck, the jury returned a verdict against Continental on its claim of nonliability and for Howard on his counterclaims in the amount of $9,500, the value of the truck. The court entered judgment on the verdict, denied Howard's post-trial motions under Fed.R.Civ.P. 50 and 59 for entry of corrected judgment, judgment notwithstanding the verdict, and a new trial on the issue of damages.

After the reading of the verdict, Judge Sharp expressly forbid the parties and their attorneys to have any contact with the jurors, but Howard, in direct defiance of the order, telephoned the jury foreman that same night. The foreman allegedly told Howard that the $9,500 verdict referred to the truck alone and that the jury returned, "another form written in red ink for the building contents of $269,000." After searching the jury room for this alleged missing second verdict form and finding nothing, the judge rejected Howard's request to question the jury regarding the verdict and, after being advised of Howard's actions the previous day, again admonished counsel and the parties, "that any attempt to contact any members of this Jury will, from this point forward, be treated as direct contempt of an Order of this Court." One week later, the foreman of the jury filed an affidavit stating in relevant part:

> "It was not the intent of any of the jurors, including myself, to limit Mr. Howard's recovery from Continental Casualty Insurance Company to only $9,500 on the truck policy by the form of the verdict the jury returned on Thursday, October 21, 1982. We believed that Mr. Howard would receive a grand total of $379,000 from Continental on both insurance policies."

Continental objected, noting that the affidavit attempted to impeach the jury's verdict and appeared to have been prepared by

* The Honorable John W. Peck, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

someone other than the foreman. Howard renewed his post-trial motions citing the affidavit as bolstering his argument for relief. Judge Sharp ordered the affidavit stricken and once again denied Howard's post-trial motions.

■ On appeal Howard argues that the district court erred: (1) in directing a verdict in favor of Continental on the punitive damages issue; (2) in denying his post-trial motions; and, (3) in striking the foreman's affidavit.[1]

## II

### A. Punitive Damages

The general rule in Indiana is that punitive damages are not recoverable in contract actions. *Hoosier Ins. Co., Inc. v. Mangino*, 419 N.E.2d 978, 981 (Ind.App. 1981). As an exception however, Indiana courts will allow the imposition of punitive damages, "where the breach also includes conduct (1) which independently establishes the elements of a common law tort such as fraud or (2) where elements of fraud, malice, gross negligence or oppression mingle in the controversy ... [and] the public interest is served by the deterrent effect of the punitive damages award." *Id.* The insured may recover punitive damages if he is able to demonstrate that the insurer was acting in bad faith in denying the claims; specifically, "bad faith means knowledge by [the insurer] that it had no legitimate reason for denying [the insured]'s claim, but nevertheless refused it...." *Id. See, e.g., Rex Ins. Co. v. Baldwin*, 163 Ind.App. 308, 323 N.E.2d 270 (1975) (insurer asserted a defense after a limitations period had expired knowing, as a matter of law, that the defense was no longer available); *Vernon Fire & Casualty Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976) (insurer refused to pay or negotiate the insurance policy proceeds until the insured procured a

release from an associate on an unrelated claim, a service to which the insurer was not entitled). Additionally, Indiana courts have allowed punitive damages when an insurer investigating a claim that it reasonably believes was fabricated by the insured prejudices the insured's ability to prove his innocence by delaying and misrepresenting the true nature of the investigation. *Riverside Ins. Co. v. Pedigo*, 430 N.E.2d 796 (Ind.App.1982). To avoid the chilling effect of punitive damage suits and to allow insurers to dispute their liability in good faith, the insured must present clear and convincing evidence of the insurer's bad acts. *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349 (Ind.1982).

> "[P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather, some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of the mistake of law or fact, or his error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing."

*Id.* at 362.

Howard bases his claim for punitive damages on two grounds. First, he contends that the, "insurer so completely lacked evidence on its sole defense of owner incendiarism as to manifest its bad faith denial of the claim, warranting an award of punitive damages under Indiana law." In the alternative, he asserts that Continental's, "conduct during the pendency of Howard's claim also warranted punitive damages." Our standard of review of a directed verdict is whether there was sufficient evidence upon which a jury could have entered a verdict for Howard on his counterclaim. *Schultz v. Owens-Illinois, Inc.*, 696 F.2d 505, 511 (7th Cir.1982). We may not weigh the evidence or determine credibility; rath-

---

**1.** Howard also contends that the district court erred by excluding evidence of Howard's good character. However, Fed.R.Evid. 404(a) expressly provides that character evidence is not admissible where the party's character is not at issue. "[I]n a civil suit based on fraud, the reputation of the defendant is not in issue." *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969). Because the admission of the character evidence was prohibited by Rule 404(a), we hold that Howard's assertion of error is meritless.

er, in determining whether Howard was entitled to have his punitive damages claim presented to the jury, we must assess the evidence in the light most favorable to Howard. *Id.* When evaluating Howard's first claim—that Continental denied his claim in bad faith—we must determine whether the record demonstrates that Continental's suspicion of owner incendiarism was reasonable. *Pedigo*, 430 N.E.2d at 806–07.

Howard testified that he was in the factory from noon until 11:00 p.m. on Sunday, January 4, 1981, the night of the fire, taking inventory, sorting damaged wood and moving equipment to create more working space. Howard further testified that he left the plant at 11:00 p.m., locked all doors behind him, returned to his house trailer located sixty to ninety feet south of the building, and shortly thereafter departed on a trip to Louisville at approximately midnight. The fire was reported to the fire department at 3:15 a.m. Based on the warping of steel "I" beams (indicating exposure to abnormally high intensity heat for an extended period of time), the presence of "spalling" (explosion-like indentations in a concrete floor), and, further, the fact that highly combustible materials (work stations, wood and tires) had been strategically placed in a pile, both the Deputy Indiana State Fire Marshal and a fire investigator retained by Continental, Gary Mang, concluded that the fire was caused by arson. Both Mang and John Shaw, the LaFayette Fire Department Assistant Chief testified that, in their opinions, the fire had been burning for some three hours before the fire department arrived. Specifically, Shaw informed the court that when he arrived at the scene, at approximately 3:18 a.m., he observed 30-foot flames coming through the roof. Shaw stated that he learned during his twenty-six years with the fire department and in training courses on the spread of a fire that flames will break through a window or roof of a building only after exhausting the oxygen supply within the structure. Based upon his knowledge, training, experience and observations of both the size of Howard's build-

ing and the intensity of the fire, Shaw concluded that the fire had been burning for approximately three hours when the fire department arrived at the scene shortly after 3:00 a.m. Furthermore, Mang stated that the arsonist had moved thirteen two-ton work stations to the center portion of the building and had stacked tires and wood around the stations. A former employee of Howard estimated that it would have taken a person operating the factory's forklift approximately a half hour to an hour to move the combustible materials into the mound described by Mang. Moreover, an accountant hired by Continental to examine Howard's financial records testified that the business' profits had declined since 1978 and the company experienced a $60,000 loss in 1980. Howard was in debt, had reduced his work force, and had sold capital assets in the summer of 1980. Finally, the accountant informed the court that in 1980 the business' liabilities exceeded its assets by some $37,000.

■ Thus, we agree with the finding of the trial court that the blaze was set by an arsonist. Moreover, the investigators' testimony established that the fire began at or about midnight, the time of Howard's departure for Louisville. The employee's information concerning the time needed to stack the work stations, tires and wood supports the conclusion that the arsonist began moving the material sometime around 11:00 p.m. Howard, whose trailer was located about sixty to ninety feet from the factory, would have become suspicious upon hearing the noise of the forklift moving the stations, wood and tires had the arson been committed by another person. Finally, the accountant's testimony would lead a reasonable person to believe that Howard had a financial motive for burning the factory. Under our standard of review of the directed verdict—whether there was sufficient evidence upon which a jury could have entered a verdict for Howard on his counterclaim—we must determine whether the record demonstrates that Continental's suspicion that Howard was the arsonist was reasonable. Based upon a review of

all of the facts and circumstances surrounding the fire, as well as the expert testimony concerning the nature of the conflagration, we hold that Continental's belief that Howard burned the factory was reasonable; in short, we do not agree with Howard's assertion that Continental did not have a reasonable ground to deny his claim.

We now turn to Howard's second argument—his claim that Continental's alleged misconduct in handling his claim warranted punitive damages. Punitive damages may be awarded against an insurer, "where elements of fraud, malice, gross negligence or oppression mingle in the controversy ... [and] the public interest is served by the deterrent effect of the punitive damages award." *Hoosier Ins.*, 419 N.E.2d at 981. To establish malice, fraud, gross negligence and oppression, Howard complains: (1) Continental's investigator, "went as far as Kentucky to investigate Howard's relatives" and also traveled to Illinois to question one of Howard's suppliers; (2) Continental's accountant did not, "bother[ ] to contact Howard or his CPA for any clarifications [of his financial records]"; (3) Continental's counsel allegedly told Howard, during his examination under oath, that the, "insurer was attempting to determine whether the fire was arson"; (4) Continental's investigator neglected to question Howard's former employees to see if they had keys to the plant; (5) the investigator also failed to discover that a neighbor had seen four men running from the plant fifteen to twenty minutes before the fire department arrived; and (6) Continental examined Howard under oath even though it had previously decided to reject his proof of loss. Howard characterizes this conduct as "pawing" Howard and his relatives and as the pursuit of a "vendetta." However, Howard has failed to demonstrate to this court why questioning Howard's relatives and supplier was improper or whether it was necessary for the accountant, in fact, to have the financial records "clarified." It ill behooves a suspected arsonist to advise a fire investigator what procedures and avenues he must explore in order to enable him to determine the cause with a reasonable certainty of a given blaze. An examination of Howard's testimony at trial reveals that Continental's counsel informed him that a second purpose of the investigation was to determine the identity of the arsonist. The investigator's omissions, if any, at best may only be classified as mere negligence. It may have been beneficial to discover the fact that four men ran from the building approximately some fifteen minutes before the fire trucks arrived but this point of information is not that important when you consider the fire had been burning for almost three hours at that point in time. Finally, Howard distorts the meaning of the record when he objects to Continental's questioning him after deciding to reject his proof of loss. Howard contends that Continental delayed notifying Howard of its decision to deny liability under the policy because it did not want to waive its rights to require Howard to submit to a sworn examination. Continental gave its representative authority to reject Howard's *proof of loss*—i.e., his inventory of lost property—on March 5, 1981. Continental examined Howard under oath on March 19, 1981. No decision regarding the rejection of Howard's claim, which would have waived Continental's right to a sworn examination, was made until June 19, 1981. Thus, Howard has failed to establish that Continental examined Howard under oath after it no longer had a right to do so. After reviewing the alleged "bad acts" pointed out by Howard (questioning relatives and suppliers; failing to seek clarification of financial records, to question former employees about keys, and to ascertain that four men had exited the building approximately fifteen minutes before the discovery of the fire trucks arrived; informing Howard that one purpose of the investigation was to determine if the fire was set by an arsonist; and, questioning Howard under oath after deciding to reject his proof of loss), we hold that he has failed to present evidence, "that is inconsistent with the hypothesis that the tortious conduct was the result of the mistake

of law or fact, or his error of judgment, over-zealousness, mere negligence or other such noninequitous human failing." *Travelers Indemn.*, 442 N.E.2d at 362. When evidence of breach of contract is, "merely consistent with wrongdoing (and consistent with innocence as well) ... punitive damages are improper." *J. Yanan & Assoc., Inc. v. Integrity Ins. Co.*, 771 F.2d 1025, 1034 (7th Cir.1985). Moreover, not only has Howard failed to establish "bad acts," but further he failed to establish that he was prejudiced by Continental's conduct. *See Pedigo*, 430 N.E.2d at 807–08. Because Howard's evidence did not come remotely close to satisfying his burden of proving malice, fraud, gross negligence and oppression with clear and convincing evidence, the trial court correctly granted a directed verdict in Continental's favor on the punitive damages claim based on Continental's conduct.

## B. Post-Trial Motions

Howard filed post-trial motions for entry of a corrected verdict, for judgment notwithstanding the verdict and for a new trial on the sole issue of the damages to the building and truck and punitive damages. Noting that the jury returned a verdict "that ... Continental take nothing by its complaint and further Howard recover of the counter defendant, ... Continental, the sum of $9,500 ...", Howard argues that the jury must have erred when it awarded damages of $9,500 rather than $379,000, the amount recoverable under the factory and business automobile policies combined.

Initially, we address the motion for a judgment notwithstanding the verdict (judgment n.o.v.). A trial judge's refusal to grant a judgment n.o.v. will not be reversed in the absence of a clear showing of abuse of discretion. *Spesco, Inc. v. General Electric Co.*, 719 F.2d 233, 240 (7th Cir.1983). A jury verdict will not be set aside if a reasonable basis exists in the record to support the verdict. *Id.* at 237. Accordingly, we must examine the record to determine if there was a reasonable basis for the jury's decision that Continental

"take nothing by its complaint" and that Howard recover $9,500.

■ Jury Instruction No. 15, defining the claim, counterclaims and affirmative defenses, as originally drafted omitted Howard's counterclaim for the value of his truck. Howard asked that the counterclaim for the value of the truck be added at the end of the instruction. The instruction, as modified by Howard, read in pertinent part:

"Defendant has also filed a counter-claim against Plaintiff. In Count I of that counter-claim Defendant alleges that he sustained a loss by fire on January 5, 1981 and that he submitted a claim under his insurance policy for the damages sustained as the result of the fire, but that Plaintiff has refused to pay him the policy proceeds which he claims are due.

Plaintiff admits that the fire occurred and that Mr. Howard submitted a claim. Plaintiff also admits that it has refused to pay Mr. Howard the policy proceeds, and states that it is not indebted to Defendant in any amount whatsoever.

As an affirmative defense to the counter-claim, Plaintiff asserts that Defendant violated the policy terms by submitting to an examination under oath and by submitting a sworn statement and proof of loss in which Defendant falsely swore that he did not, either alone or in collusion with others, intentionally cause the fire.

In Count III of his counter claim, Defendant Howard seeks recovery under a separate policy of insurance for a 1977 Ford F750 Tractor destroyed in the fire. Plaintiff Continental admits that it has not paid for the tractor, but denies that any claim was ever made for it or that it owes anything for it."

We note that the jury was not specifically instructed to consider the affirmative defense of fraud and false swearing as to the automobile policy even though the defense was applicable to this policy. Furthermore, as was more fully discussed in the preceding section, a finding that Howard was the arsonist is supported by the record. How-

ard had a financial incentive to burn the factory; the fire was set just before he left for Louisville; the work stations, wood and tires were moved into a pile sometime between 11:00 p.m. and midnight, and Howard, whose trailer was located only sixty to ninety feet from the factory would have become suspicious upon hearing the noise of the forklift moving the stations, wood and tires had the arson been committed by another person. We conclude that a jury following the court's jury instructions would properly have found that Howard was the arsonist and would deny him recovery on the factory policy because of their being convinced that the affirmative defense of fraud and false swearing precluded his recovery of the factory policy proceeds. Instruction 15, however, apparently because of an oversight, omitted the affirmative defense to the automobile policy. Thus, it is evident to this court that a jury following this instruction could very easily have awarded Howard relief even though it believed he committed the arson of the building because of the court's failure to properly instruct the jury that the affirmative defense applied to the automobile policy. Our review of the record reveals that the jury could reasonably find that Howard was the arsonist and that the affirmative defense did not apply to the automobile policy because the instructions failed to state that the affirmative defense applied to the policy, and award him the value of the truck. Because there is a reasonable basis for the jury's verdict, we refuse to set it aside.[2]

As to the motion for new trial on the issue of damages, partial trials are only proper where, "it clearly appears that the issue to be retried is so distinct and separate from the other that trial of it alone may be had without injustice." *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500–01, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). When the question of damages, "is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty" granting a partial trial on the issue of damages would amount to a denial of a fair trial. *Id.* Because we have held that the jury properly found that Continental was not liable on the factory policy, Howard may not recover the proceeds of the policy. Since we conclude that the issue of damages is not so distinct and separable from the issue of liability that a trial of it alone may be had without injustice to Continental, we hold that the district court properly denied the motion for a new trial on the issue of damages.

Finally, in his motion for a corrected verdict, Howard asks the court to set aside the judgment for $9,500 and enter a "corrected judgment in the sum of $379,-000." A motion to amend the judgment under Fed.R.Civ.P. 59(e) is appropriate if the court in the original judgment has failed to give relief on a claim on which it has found that the party is entitled to relief. 11 Wright & Miller, Federal Practice & Procedure, Civil § 2817 at 111. How-

---

**2.** The procedural posture of this case causes us to seem to affirm a jury verdict that was the product of a trial judge's error; we hasten to note that we are not affirming the trial judge's error because the issue of whether substantial evidence supported the jury's verdict awarding Howard $9,500 was presented neither to this court not to the district court. Even though Continental's attorney was aware of the trial court's error in failing to instruct the jury properly in regard to the applicability of the affirmative defense to the automobile policy, Continental failed to file a motion for judgment n.o.v. or to file a cross-appeal challenging the award of $9,500 to Howard. Rule 50(b) of the Federal Rules of Civil Procedure forbids a court of appeals from directing a verdict in favor of a party who fails to

move for a judgment n.o.v. following trial. *Johnson v. New York, N.H. & H. R.R.,* 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952); *Glove Liquor Co. v. San Roman,* 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177 (1948); *Cone v. West Va. Pulp & Paper Co.,* 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947). If Continental had asked for a judgment n.o.v. and, assuming its motion was denied by the trial court, had filed a cross-appeal in this court, we would, in all probability have directed a verdict in its favor. In light of Continental's failure to file a motion for a judgment n.o.v. in the district court or to file a cross-appeal in this court, we are precluded from reaching the issue of whether the verdict for $9,500 was supported by the evidence.

ever, because the jury found that Howard was not entitled to relief on his claim under the factory policy, we hold that the district court correctly denied Howard's request for a corrected verdict.

## C. The Foreman's Affidavit

After the entire verdict was read to the jury in open court, the trial judge addressed the jury:

"THE COURT: You have heard the verdict read by the Clerk indicating that the jury finds for the Defendant Ervin Howard upon the Complaint of Continental Casualty and that Continental Casualty Company takes nothing by its Complaint and, further, that Ervin Howard on his Counterclaim recovers from and against the Continental Casualty Company the sum of $9,500.

Is this the verdict of each and all of the members of this Jury?

THE JURORS: Yes.

THE COURT: If any of the eight members of this Jury now in any way objects to or dissents from this announced verdict, please raise your right hand.

The Court sees none."

Judge Sharp, in the presence of the jury instructed the parties and attorneys, "it is the normal practice of this Court to restrain the lawyers and parties in this case from attempting to interrogate you about the contents of your deliberations and the reasons for your verdict, and that is now done.... [T]he parties and their representatives are restrained from attempting to interrogate you any place." Despite the court's admonishment, Howard contacted the jury foreman, James Staggs, that night. The next morning, Howard's attorney, Mr. William Bennett, informed the court that Staggs told Howard that the $9,500 verdict was just for the truck and that there existed "another form written in red ink for the building contents of $269,-000." Judge Sharp, upon receipt of this information, directed a search of the jury room, but no slip of paper indicating that the jury had returned a verdict for $269,-000 for the building contents was found.

The only papers recovered in the room contained a juror's doodling. The court set a hearing on the matter, ordered the jury to reconvene at that time, and expressed to Attorney Bennett his displeasure that his client, Howard, had contacted the jury. The judge specifically instructed Bennett to inform his client of the contempt powers of the court. At the hearing held two days later, Continental objected to any questioning of the jury as violative of Fed.R.Evid. 606(b) arguing that jurors may only testify, "on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror." The district court agreed and informed the jury, which was not present during counsel's arguments, that Howard's contact with Staggs "was wholly inappropriate." After the jury's return to the courtroom, Judge Sharp again instructed the parties and their counsel, "any attempt to contact any members of this jury will, from this point forward, be treated as direct contempt of an Order of this Court." That night, a person representing himself to be a former employee of Howard contacted three members of the jury panel, including the foreman. One week after the hearing, the foreman filed an affidavit with the court asserting, in six numbered paragraphs, that the jury intended that Howard recover $369,500 under the factory policy because he was innocent of arson. The court mailed copies of the affidavit to the attorneys and Howard's attorney, Mr. Roger Bennett, filed a motion incorporating the affidavit one and a half hours after it was mailed. Continental objected, pointing out that the affidavit attempted to impeach the jury's verdict and that the form of the affidavit and Bennett's filing of a motion before the affidavit could have reached his office in the mail indicated that Howard and his attorney had again contacted the jury in violation of the court's orders. Judge Sharp ordered the affidavit stricken. Howard argues that the judge erred because the affidavit, rather

than impeaching the verdict, instead "shows the true verdict."

■ Fed.R.Evid. 606(b) provides:

"(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

The rule prohibiting impeachment of jury verdicts was adopted because without the rule,

"Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference."

*McDonald v. Pless*, 238 U.S. 264, 267–68, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915). In addition to preventing juror harassment and assuring the finality of the jury's verdict, Rule 606(b) prevents fraud by individual jurors. *United States v. Eagle*, 539 F.2d 1166 (8th Cir.1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977). The Rule prohibits inquiry into the thought processes of jurors. *Mattox v. United States*, 146 U.S. 140, 148, 13 S.Ct. 50, 52, 36 L.Ed. 917 (1892). If there were no rule of incompetency, the "secret thought of one juror" would have "the power to disturb the express conclusions of twelve." *Id. See, e.g., United States v. Neary*, 552 F.2d 1184 (7th Cir.1977) (juror may not impeach verdict by testimony concerning his misconception of court's instructions). Rule 606(b) does not bar testimony by a juror that all jurors agree that through inadvertence, oversight or mistake the verdict announced was not the verdict on which agreement had been reached. *Young v. United States*, 163 F.2d 187, 189 (10th Cir.), *cert. denied*, 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355 (1947).

■ An examination of Staggs' affidavit, reproduced in the footnote,[3] reveals

---

3.     AFFIDAVIT

*James H. Staggs* being first duly sworn upon oath deposes and says:

1. That Affiant, *James H. Staggs* was a member of the jury and was also jury foreman in the case of Continental Casualty Insurance Company vs. Ervin Howard, Civil No. *L81–45* tried to the jury in the United States District Court for the Northern District of Indiana at Lafayette.

2. That the jury returned a unanimous verdict in favor of Ervin Howard, the Defendant and Counter Plaintiff on Thursday, October 21, 1982 after finding Mr. Howard innocent of arson or of having intentionally burned his own building, property, and truck as allegded [sic] by his insurance company, Continental Casualty.

The jury unanimously intended the verdict so rendered to award Mr. Howard not only the $9,500 on his truckk [sic] but also entitle him to collect the $369,500 on the building, contents, and equipment insurance policy which there was no dispute that Continental Casualty Insurance Company issued to Mr. Howard. Based upon the instructions from the court the jurors, including myself, were all acting under the understanding and belief that Mr. Howard would also be entitled to collect the $369,500 from Continental Casualty Insurance Company since we found him completely innocent of arson or any wrongdoing.

4. The jury did not find in favor of Continental Casualty Insurance on any issue.

5. It was not the intent of any of the jurors, including myself, to limit Mr. Howard's recovery from Continental Casualty Insurance Company to only $9,500 on the truck policy by the form of the verdict the jury returned on Thursday, October 21, 1982. We believed that Mr. Howard would receive a grand total of $379,000 from Continental on both insurance policies.

6. The above information is based upon the Affiant's personal knowledge of the facts stated,

that Staggs failed to renew his assertion that there existed a separate verdict, in red ink, for the proceeds under the factory policy; rather, Staggs simply asserts that the jurors intended that Howard recover $369,500 on the building. The affidavit, therefore, in an attempt to testify about the jury's thought processes, does not advance Staggs' previous assertion that the verdict announced was not the verdict that had been reached. Because the affidavit seeks to introduce new evidence barred by Rule 606(b), the trial court properly ordered it stricken.

Moreover, the facts of this case illustrate the sound policy embodied in Rule 606(b). Judge Sharp polled the jury by lot and the jurors not only affirmed the verdict but also remained silent when the court asked if any of them, in any way objected to or dissented from the announced verdict. If Howard found the verdict inconsistent because it found against Continental and only awarded him $9,500, the proper procedure is for the attorney to request the verdict to be clarified before the jury was discharged. *Fox v. United States*, 417 F.2d 84, 88 (5th Cir.1969) (Rule 606(b) does not bar a judge from questioning a jury that returns with an inconsistent or ambiguous verdict before the jury is discharged). Instead, the trial court, and now this court, is asked to evaluate assertions, obtained after repeated admonitions not to contact the jury, that the real verdict was not filed and, after the search of the jury room failed to produce the "real verdict," that the jury intended to award Howard $379,000 rather than $9,500. Moreover, Howard's conduct not only disregards the finality of the jury's verdict, but also impugns the integrity of the judicial process. The fact that Staggs' name was typed onto a blank with a different typewriter indicates that the affidavit could very well have been prepared by a person other than Staggs. The affidavit's adherence to the traditional form (beginning with, "_____ being first duly sworn upon oath deposes and says," containing numbered paragraphs and ending with, "Further Affiant sayeth not") is strange and leads one to speculate that the instrument might very well have been prepared by one who has had the benefit of a legal education rather than a layman. Moreover, it is most reasonable to conclude that the affidavit was drafted by a person with a legal education because the affidavit makes a very legalistic and logical point by point refutation of the Continental's counsel's argument at the hearing held after Howard first contacted Staggs—an argument that Staggs, a layman, also could not have heard because he was not present in the courtroom when the argument was made but rather was with the jury in the jury conference room. Finally, because Howard's counsel, Roger Bennett, incorporated the affidavit into a memorandum within one and one-half hours after it was mailed to him by the court, it is highly questionable that Howard's attorneys initially received a copy from the court but rather gained possession of the affidavit through other means. The contact with the jurors, after the repeated admonitions of the trial judge, in an attempt to impeach the jury's verdict is contemptible. We are appalled by the individual questioning of jurors outside the confines of the courtroom.

The judgment of the district court is in all matters AFFIRMED.

---

and is true and correct. Neither of the parties or their attornies [sic] contacted me for this affidavit.

Further Affiant sayeth not.