**SIMS' CRANE SERVICE, INC.,
Plaintiff-Appellant,**

v.

**IDEAL STEEL PRODUCTS, INC.,
Defendant-Appellee.**

**No. 85–8955.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 7, 1986.

---

William A. Trotter, III, Augusta, Ga., for plaintiff-appellant.

Wyck A. Knox, Ted H. Clarkson, Augusta, Ga., for defendant-appellee.

Before VANCE and EDMONDSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

EDMONDSON, Circuit Judge:

In this bailment for hire case, plaintiff-appellant Sims' Crane Service, Inc. (Sims') appeals from a judgment notwithstanding the verdict (jnov) in favor of defendant-appellee Ideal Steel Products, Inc. (Ideal Steel). Because the jnov should not have been granted, we REVERSE the district court judgment.

Ideal Steel rented a crane and its operator from Sims' to move various large objects, including a concrete hopper. The bailment for hire contract provided that Sims' operator would run the crane and that Ideal Steel's employees would attach the rigging to the objects to be moved. During contract negotiations, Ideal Steel informed Sims' that, when empty, the hopper weighed 25,000 pounds.[1] When the crane arrived, its operator set it up to lift 37,000 pounds.[2] The first attempt to lift the hopper was unsuccessful; Ideal Steel employees then informed Sims' operator that some debris remained in the hopper and added to its weight.[3] These employees had climbed onto the hopper to examine its interior. Despite the extra weight, the Sims' operator had Ideal Steel's employees re-rig the hopper; and he once again tried the lift. The result was $65,000 in damage to the crane; Sims' sued for that amount.

At trial the United States District Court for the Southern District of Georgia granted a directed verdict for Ideal Steel at the close of Sims' evidence. A panel of this court upheld the district court on one issue but reversed it on the question of gross negligence, holding that the evidence adduced was sufficient to send that issue to the jury. *Sims' Crane Service, Inc. v. Ideal Steel Products, Inc.*, 750 F.2d 884, 887 (11th Cir.1985) (*Sims' I*). The court, therefore, remanded the case for further proceedings.

On retrial the sole question was whether Ideal Steel was grossly negligent either in failing to tell Sims' the true weight of the hopper or in rigging the hopper. *See gen-*

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Ideal Steel contends it stated that the hopper weighed 25,000 to 35,000 pounds.

2. The crane in question could lift up to 100,000 pounds. Depending on how it was positioned, the crane etc.

3. The parties hotly contest how much concrete debris these employees indicated remained in the hopper. The operator testified that he was told only a small amount was present "in the corners." Ideal Steel argued that it represented the weight of the debris at 12,000 to 15,000 pounds. When the hopper was weighed after the accident, it weighed over 60,000 pounds.

*erally* O.C.G.A. sec. 44–12–62(b).[4] Ideal Steel elected not to move for a directed verdict either at the close of plaintiff's evidence or at the close of all evidence.

After all evidence was in, the trial judge properly instructed the jury, informing them that Ideal Steel's gross negligence was a necessary predicate for Sims' to prevail. Both parties rejected the court's suggestion of a special verdict or special interrogatories and instead requested a general verdict without interrogatories.

The jury returned to the courtroom with its verdict. In response to the court's request to publish the verdict, the jury foreman stated: "We the jury find for the plaintiff Sims' Crane in the amount of $32,-500.00. Would you like for me to explain our reason?" The trial judge asked counsel if they objected; neither did. The foreman then explained that the jury could not find gross negligence on the part of either party and that the jury therefore had decided that "the only fair thing would be to divide up the damages."[5]

Ideal Steel then moved for jnov or, in the alternative, a new trial. The district court granted the jnov despite Ideal Steel's failure to move for a directed verdict, and Sims' appealed.

This appeal raises two basic issues. First, whether the district court could enter a judgment notwithstanding the verdict for Ideal Steel in the absence of a motion for a directed verdict. Second, whether the district court was precluded from impeaching the jury's verdict based on the jury's contemporaneous, extemporaneous exegesis.

■ Taking the latter issue first, we agree with the trial judge that "the orally given findings [cannot] impeach the verdict." It is clear that the jury's explanation "was heard as a matter of curiosity rather than as a solemn and carefully considered" binding special verdict or interrogatory.

This conclusion is mandated by several considerations. As the trial judge indicated, the statement cannot be treated as a special verdict or interrogatory given the absence of the procedural safeguards presented in Federal Rule of Civil Procedure 49. *See Kazan v. Wolinski,* 721 F.2d 911, 915 (3d Cir.1983). Moreover, Sims' counsel did not—and could not—know that the jury's response would be treated as a special interrogatory; binding the client on counsel's consent in such a situation would be manifestly unjust.[6] *See id.* Further-

**4.** O.C.G.A. sec. 44–12–62(b) provides:

44–12–62. Duties of hirer; liability for acts of bailor's agents.

. . . . .

(b) If the bailor sends his own agents with the thing bailed, the hirer shall not be liable for the acts of such agents but shall only be liable either to the bailor or to third persons for the consequences of his own directions and for gross negligence.

**5.** The entire colloquy was as follows:

THE COURT: Mr. Tucker, are you the foreman?

MR. TUCKER: Yes.

THE COURT: Do you have a verdict?

MR. TUCKER: Yes.

THE COURT: Is it dated and signed?

MR. TUCKER: Yes.

THE COURT: Would you like to publish the verdict, please?

MR. TUCKER: We the jury find for the Plaintiff Sims Crane in the amount of $32,500. Would you like me to explain our reason?

THE COURT: Gentlemen, would you like to hear the explanation?

MR. KNOX [counsel for Ideal Steel]: Yes.

MR. TUCKER: We could not find that there was gross negligence on either party and we feel that both parties were at fault in some way and that the only fair thing would be to divide up the damages.

THE COURT: So you simply divided them up, is that correct?

MR. TUCKER: Yes.

THE COURT: You found no gross negligence on the part of either party?

MR. TUCKER: No, sir.

THE COURT: Thank you.

All right, Mr. Tucker, now I'm going to ask the rest of the jurors if that is a correct statement of your unanimous verdict and the reason for it? Does anyone disagree with that as the reason for the verdict?

(No response.)

THE COURT: Thank you very much.

**6.** The trial judge noted in his order, "There is no doubt in my mind that plaintiff's counsel, who was then quite happy with the jury's general verdict, would not have consented to hear the explanation if he had any inkling that such

more, special verdicts or interrogatories are the appropriate way to obtain specific answers from a jury. *Phillips Petroleum v. Bynum*, 155 F.2d 196, 199 (5th Cir. 1946).[7] Counsel for Ideal Steel *specifically* chose to receive a general verdict and declined the trial court's suggestion of a special verdict or interrogatories. In such a situation, the parties should be bound by the verdict unless the information offered by the jury goes to "extraneous prejudicial information improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any particular jury." Federal Rule of Evidence 606(b); *Carson v. Polley*, 689 F.2d 562, 581 (5th Cir.1982).

■ As a final point, Rule 606(b) would have precluded the court from impeaching the verdict even if the jury's statements had been offered in the form of affidavits.[8] *See University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547 (5th Cir.1974); *Woods v. Lowery*, 297 F.2d 827, 828 (5th Cir.), *cert. denied*, 371 U.S. 844, 83 S.Ct. 74, 9 L.Ed.2d 79 (1962). Obviously, the extemporaneous and contemporaneous nature of the volunteered explanation does not alter Rule 606(b)'s application.[9]

Thus, even if we accept Ideal Steel's argument that its failure to move for a directed verdict does not preclude it from moving for (and receiving) jnov, the statements of the jury cannot be used—in any manner—as the basis for granting jnov. The judgment notwithstanding the verdict must stand or fall on the facts adduced and cannot be predicated on the jury's revelations.[10]

The sole remaining issue, therefore, is whether the trial court properly granted Ideal Steel's motion for jnov even though Ideal Steel never moved for a directed verdict. Ideal Steel raises two alternative theories supporting its position that the jnov was proper; neither is persuasive.

Ideal Steel argues that this court has adopted a "flexible" view of Rule 50(b)[11] in the past, *see National Industries, Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir.1986), and that the peculiar facts of this case fit within this flexible analysis.[12]

The cases adopting a flexible approach look not to the specific wording of Rule 50(b) but toward its purpose. *See id.; Bohrer v. Hanes Corp.*, 715 F.2d 213, 216–17 (5th Cir.1983), *cert. denied*, 465 U.S.

---

consent would bind his client to that explanation."

7. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

8. Fed.R.Evid. 606(b) provides:
   Rule 606. Competency of Juror as Witness.

   . . . . .

   (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he

would be precluded from testifying be received for these purposes.

9. Absent Rule 606(b), jury verdicts would be open to continual attack. The effect of Rule 606(b) is, in some instances, to place greater weight on finality than accuracy. While this policy decision may be open to philosophical attack, any alteration is for those who create the rules and not this court.

10. In effect the jury's comments were surplusage and are no more than interesting dicta which tends to show, not surprisingly, that juries sometimes do not follow instructions.

11. Fed.R.Civ.P. 50(b) provides:
    (b) Motion for Judgment Notwithstanding the Verdict.... a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict....

12. The clear, general rule is that a motion for jnov may not be granted unless a motion for directed verdict was made at the close of all evidence. *Wilson v. Attaway*, 757 F.2d 1227, 1237 (11th Cir.1985).

1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *Splitt v. Deltona*, 662 F.2d 1142, 1144 (5th Cir.1981) (Unit B).[13] The purpose of Rule 50(b) is to require a motion for directed verdict "to avoid making a trap" of the motion for jnov so that counsel is not "ambushed" or "sandbagged" regarding the sufficiency of the evidence he adduced. *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1025 (5th Cir.1979).

All of the cases adopting the flexible Rule 50(b) analysis, however, involved litigants who moved for directed verdict (1) at the close of plaintiff's evidence but not at the close of all evidence or (2) on some, but not all, issues. While the unusual posture of this case somewhat favors extending this approach to litigants in this particular position—even though Ideal Steel made *no* motion for directed verdict—we decline to do so.

Ideal Steel argues that a motion for directed verdict would have been a hollow technicality of form over substance because the trial judge informed the parties, at the close of Sims' evidence, that *Sims' I* had determined that the issue of gross negligence had to go to the jury. Additionally, if the evidence adduced at retrial was substantially similar to that at trial, *Sims' I* had determined that the law of the case was that a directed verdict was improper under these facts. Although both of these assertions are persuasive to some extent, we note that counsel sometimes must take certain required, albeit formalistic, steps to preserve the rights of their client and to perfect the record for post-verdict proceedings.

■ Objections, proffers, and motions are frequently required in trials even when it may seem certain to the pertinent lawyer that the trial judge's view is that such efforts ought not to prevail. Of course, almost nothing is really certain in litigation; "[i]ndeed, it is always probable that something improbable will happen." *Warren v. Purtell*, 63 Ga. 428, 430 (1879) (Bleckley, J.). Thus, it is hard to know when some act would have been truly useless. In any event, orderly and definite procedural steps are necessary to sharpen the issues before the court and to avoid misunderstanding. While it is true that this Circuit has not been strict about motions for directed verdicts, we cannot depart completely from Rule 50(b). A lawyer who never moves for directed verdict, given the wording of Rule 50(b) and the clear case law regarding the effect of such a decision—regardless of the reasons for such a decision, must realize that a subsequent motion for jnov can be granted only if plain error can be proven. *See generally Wilson v. Attaway*, 757 F.2d 1227 (11th Cir.1985).

Therefore, in deciding whether the jnov in favor of Ideal Steel was proper in the absence of any motion for directed verdict, "'our inquiry is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was noted which, if not noticed, would result in a manifest miscarriage of justice.'" *Wilson v. Attaway*, 757 F.2d 1227, 1237 (11th Cir.1985). Although Ideal Steel must contend otherwise, evidence clearly existed to support the jury's verdict.

■ So far as plain error is concerned, the record does not demonstrate that plain error occurred.[14] The standard for granting jnov is the same as for granting directed verdict. *Compare Brown v. Arlen Management Corp.*, 663 F.2d 575, 581 (5th Cir.1981) (jnov) *with Lane Crane Service, Inc. v. IBEW, Local Union No. 177*, 704 F.2d 550, 553 (11th Cir.1983) (directed ver-

---

**13.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

**14.** "'Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." *United States v. Edwards*, 696 F.2d 1277, 1282 (11th Cir.), *cert. denied*, 461

U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). If the statements of the jury could be considered, this case would be closer to plain error. We need not reach that issue, however, since we already have determined that those statements cannot be considered. Neither do we suggest that a jnov in this case would have been warranted had a proper motion for directed verdict been made; we do not address that question.

dict). Thus, since the law of the case is that directed verdict was improper under the facts adduced at the original trial, *see Sims' I,* jnov is improper at retrial unless substantially dissimilar evidence was introduced. Although the evidence adduced at the second trial necessarily differed from that presented at the original proceeding in some respects, it was substantially similar and not sufficiently different to demonstrate plain error.

In summary, the jury's revelations were not binding and could not be employed either to impeach the verdict or to demonstrate plain error. Additionally, Ideal Steel's failure to move, at any time, for directed verdict precludes consideration of its motion for jnov on grounds other than plain error. Last, the record adduced at retrial was substantially similar to that at the original trial and does now show plain error.

The judgment of the district court therefore is REVERSED.