**Robert J. McCULLOUGH, Plaintiff-Appellee,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant-Appellant.**

**No. 90–1528.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 15, 1991.

Decided July 8, 1991.

---

Curtis G. Rundell, II, Troy, Mich. and Sidney J. Suo (argued), Suo, Rundell & Hechtman, Troy, Mich., for plaintiff-appellee.

Joseph J. McDonnell (argued), Durkin, McDonnell & Clifton, Detroit, Mich., for defendant-appellant.

Before NORRIS and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This appeal arose from the post-verdict revision of the jury's award of damages to Appellee Robert McCullough. For the reasons stated below, we affirm the district court's denial of Appellant Consolidated Rail Corporation's motion to amend or alter the judgment.

## FACTS

At the conclusion of the trial in this personal injury case, the jury was asked to answer six special verdict questions. During the course of deliberations, the jury sent out a note asking for clarification of Question 3 which read: "What was the total amount of damages sustained by plaintiff, Robert J. McCullough?" The jurors asked: "Is question number 3 total awarded amount to plaintiff or amount minus his percentage of responsibility or negligence?" After consultation with the attorneys for both parties, the judge sent the reply: "Total amount awarded." Shortly thereafter, the jury returned its verdict for McCullough finding him fifty per cent contributorily negligent and entering $235,000 as the answer to question 3.

After the verdict was returned, the judge went into the jury room to thank the jurors for their service. At that time, the jury foreman asked whether the plaintiff would receive the entire $235,000. The judge informed the jurors that because of the finding that McCullough was fifty per cent contributorily negligent, the $235,000 verdict would be reduced by fifty per cent. The foreman and several other jurors stated that they had deducted fifty per cent from the verdict and intended the net recovery to be $235,000.

Following this conversation, the judge informed counsel for both parties of his conversation with the jurors. Defense counsel was still present. However, plaintiff's counsel had left the courthouse, so his partner was contacted on a speakerphone in the courtroom. Over a defense objection, the judge then reconvened the jury and asked the foreman: "[W]as it the intention of the jury to bring back an award of $235,000 minus the 50 per cent?" The foreman replied negatively and the judge asked him to explain the jury's intention. The foreman stated: "The intention was—total awards—the 235 would have been awarded to plaintiff. It should have read $470,000 minus the 50 per cent." The judge then polled the rest of the jurors and each responded that the intention was to award $470,000 less fifty per cent. The jurors indicated this clarification by writing on the verdict form: "TOTAL AWARD $470,000 Minus 50% = 235,000 TO BE AWARDED TO PLAINTIF" [sic]. The judgment was entered accordingly. Appellant made a motion to amend or alter the

judgment. The motion was denied and Appellant appealed.

## ANALYSIS

Appellant argues that FRE 606(b) prohibited the district court's inquiry into the validity of the verdict. FRE 606(b) states:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Appellant contends that the district court's questioning of the jurors about the verdict was an inquiry into their thought processes and therefore violated FRE 606(b). McCullough's position is that the revision of the award was a correction in the transmission of the verdict rather than the impeachment of a verdict. McCullough submits that the court did not inquire into the thought processes or emotional reactions of the jurors, and therefore FRE 606(b) has not been violated. There is no precedent directly on point from this Circuit and there is a split of opinion from the other Circuit Courts. Therefore it is helpful to turn to the notes of the advisory committee.

The values promoted by the exclusion of the evidence include "freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." Fed.R.Evid. 606 advisory committee notes (citing *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915)). However, the Committee noted that "putting verdicts beyond effective reach can only promote irregularity and injustice." *Id.* FRE 606(b) attempts to accommodate these competing considerations. In federal cases, the focus has been on insulating "the manner in which the jury reached its verdict, ... including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process." *Id.* The Committee also stated that the rule was not intended to specify the substantive grounds for setting aside verdicts for irregularity and that allowing jurors "to testify as to matters other than their own inner reactions involves no particular hazard to the values sought to be protected." *Id.* Furthermore, a respected treatise states that "Rule 606(b) would not bar testimony by a juror that all the jurors agree that through inadvertence, oversight or mistake the verdict announced was not the verdict on which agreement had been reached." J. Weinstein, *Weinstein's Evidence* § 606[04], at p. 606–40. Due to the difficulty in balancing the competing values implicated by this rule, it is not surprising that the Circuit Courts have interpreted it differently.

Appellant argues that this court should follow *Karl v. Burlington Northern Railroad Co.*, 880 F.2d 68 (8th Cir.1989). *Karl* was a comparative negligence case in which the jury found the defendant to be twenty-five per cent negligent. In response to an interrogatory asking for the total amount of damages sustained by the plaintiff, the jury entered $273,750. *Id.* at 71. Because this amount was approximately twenty-five per cent of the damages requested, the plaintiff's attorney suspected that the jury had mistakenly entered the net amount rather than the gross amount of damages. *Id.* The judge interviewed the jury foreman on this point. The foreman confirmed that the jury intended the plaintiff to have a net recovery of $273,750. Subsequently, plaintiff's counsel filed affidavits from the other jurors stating that they shared the foreman's understanding of the damage award. The district court characterized the error as one in transmission of the verdict, rather than an attempt to impeach the verdict, and entered

judgment for the plaintiff in the amount of $273,750. *Id.*

On appeal, the Eighth Circuit acknowledged that the district court could consider jurors' testimony that through inadvertence, oversight, or mistake, the announced verdict was not the one to which the jurors had agreed. *Id.* at 74. However, the Eighth Circuit ruled that the error in this case went to the validity of the verdict and receiving the jurors' statements violated "Rule 606(b) because the testimony relates to how the jury interpreted the court's instructions, and concerns the jurors' 'mental processes,' which is prohibited by the rule." *Id.*

Appellant also cites several other cases to support its position, but these are distinguishable. For example, *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486 (5th Cir.1987), was a contributory negligence case in which the jury determined that the defendant was only four per cent negligent. The jury found that the actual damages were $100,000. *Id.* at 488. This figure was four per cent of the requested 2.5 million in damages. Sometime after the verdict was returned the plaintiff's attorney contacted members of the jury to inquire if they realized that the plaintiffs would receive only $4000 under the verdict returned. At a hearing on the matter, some of the jurors stated that they had intended the net recovery to be $100,000, but others stated that the outcome was as they intended. *Id.* The district court denied the plaintiff's motion for a new trial and the Fifth Circuit affirmed. *Peveto* is distinguishable from the present case for two reasons. First, the jurors were not unanimous in confirming that the verdict had been communicated incorrectly. Clearly this is not a case where "all the jurors agreed that through inadvertence, oversight or mistake the verdict announced was not the verdict on which agreement had been reached." *Weinstein's Evidence, supra.* Secondly, in *Peveto* the plaintiffs' attorney sought out the jurors after the trial. This runs counter to FRE 606(b)'s purpose to protect the jurors from harassment or embarrassment. Thus, this case has no application here.

The Fifth Circuit addressed this issue again in *Robles v. Exxon Corp.*, 862 F.2d 1201 (5th Cir.), *cert. denied*, 490 U.S. 1051, 109 S.Ct. 1967, 104 L.Ed.2d 434 (1989). *Robles* involved a Texas statute under which the plaintiff could not recover if she was found to be more than fifty per cent responsible for her injury. The judge instructed the jury twice on this point. The jury found the plaintiff to be fifty-one per cent negligent. *Id.* at 1203. After the verdict was returned, the judge commented that the plaintiff would take nothing. Shortly thereafter the jury forewoman told a marshal that there had been a misunderstanding. The judge reconvened the jury. The jurors testified that they thought by finding the plaintiff more than fifty per cent negligent, the judge would establish the damages. One juror stated that the jurors were unable to "come up with a reasonable amount to reward" the plaintiff even though they "wanted to give her some money." *Id.* The judge had the jurors return the next day for further deliberations and they returned a verdict finding plaintiff forty-nine per cent negligent. *Id.* at 1204. The judge entered judgment on the second verdict. On appeal, the Fifth Circuit reversed on the grounds that FRE 606(b) prohibited evidence that the jury misinterpreted its instructions and that some of the testimony directly concerned the jurors' mental processes in arriving at the verdict. *Robles* is distinguishable from the present case because the juror cited above testified about the process by which the jury arrived at the percentage of negligence. The judge in this case inquired only as to the intended verdict and did not elicit any testimony about the process by which the jury reached its verdict.

*Continental Casualty Co. v. Howard*, 775 F.2d 876 (7th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986), is also inapposite. In *Howard*, the jury returned a small damage award in a case with multiple claims. After the verdict was returned, the judge admonished the parties and their counsel not to contact the jurors. *Id.* at 878. Despite this warning, Howard contacted jurors on

more than one occasion and eventually produced an affidavit from the foreman stating that the jury had intended to award an additional $269,000. *Id.* The court struck the affidavit. The Seventh Circuit affirmed. The facts of this case are easily distinguishable form the present case. In *Howard,* there was more than a suggestion of unethical behavior by both Howard and his counsel. The Seventh Circuit expressed outrage at the attempt to "impugn the integrity of the judicial process." *Id.* at 886. No such circumstances exist in the present case.

Finally, in *Sims' Crane Service, Inc. v. Ideal Steel Products, Inc.,* 800 F.2d 1553 (11th Cir.1986), the plaintiff's recovery under a state statute was dependent on a finding that the defendant was grossly negligent. After returning a general verdict for the plaintiff, the jury foreman offered to explain the verdict and stated that since the jurors could not find gross negligence by either party, they decided to divide up the damages. *Id.* at 1555. The district court granted the defendant's j.n. o.v. motion. However the appellate court reversed because the defendant had not moved for a directed verdict. Additionally, the Court stated that the foreman's comments were heard as a matter of curiosity and could not be treated as binding special interrogatories. *Id.* Tangentially, the court noted that FRE 606(b) would have precluded the court from impeaching the verdict even if the foreman's statement had been in the form of an affidavit. *Id.* at 1556. This case does little to bolster Appellant's position.

McCullough's strongest support comes from the Second Circuit in *Attridge v. Cencorp Division of Dover Technologies Int'l, Inc.,* 836 F.2d 113 (2d Cir.1987). In *Attridge,* a contributory negligence case, the jury found the plaintiff eighty per cent negligent. In response to a special verdict question about damages suffered, the jury entered the figure of $150,000. The verdict was returned and the jury was discharged. Afterward, two jurors told the courtroom deputy that they believed the $150,000 figure to be the net recovery for the plaintiffs. The deputy informed the judge who recalled the jury the following morning. Over the defendant's objection, the judge interviewed the jurors. Each stated that the plaintiffs were to receive a net recovery of $150,000. The judgment was entered accordingly.

On appeal, the Second Circuit affirmed. The court stated that the permissibility of juror testimony depended on the purpose for which it was offered. *Id.* at 117. The court approved juror interviews that were "designed to ascertain what the jury decided and not why they did so." *Id.* The court then noted that the judge limited his inquiry to a single question: "What was your understanding as to what the verdict was; what was the jury verdict?" *Id.* The court concluded that "the interviews were intended to resolve doubts regarding the accuracy of the verdict announced, and not to question the process by which those verdicts were reached" and affirmed the district court. *Id.*

Other courts have found jurors to be competent witnesses on the issue of whether the verdict delivered was the one agreed upon. *See, e.g., United States v. Dotson,* 817 F.2d 1127 (5th Cir.1987) (juror's affidavit "admissible to show that the verdict delivered was not that actually agreed upon ... but a juror may not subsequently impeach a verdict by stating how it was reached) (citing *University Computing Co. v. Lykes–Youngstown Corp.,* 504 F.2d 518, 547–48 n. 43 (5th Cir.1974)); *Fox v. United States,* 417 F.2d 84, 89 (5th Cir.1969) ("It has long been well settled that the affidavit of a juror is admissible to show the true verdict or that no verdict was reached at all."); *Young v. United States,* 163 F.2d 187, 189 (10th Cir.), *cert. denied,* 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355 (1947) (jurors are competent witnesses to show that through oversight, inadvertence, or mistake respecting the substance of the verdict returned, it was not the verdict reached in the jury room); *Mount Airy Lodge, Inc. v. Upjohn Co.,* 96 F.R.D. 378 (E.D.Pa.1982) (FRE 606(b) does not preclude the judge from interviewing the jurors *in camera* as to whether the verdict

returned, through mistake or inadvertence, was not what the jurors intended).

Concededly, this case presents a difficult issue for decision. However, with regard to the circumstances of this case, we are persuaded that *Attridge, supra,* and the cases cited above present the better reasoned approach. In utilizing this approach, the interests of justice are served in assuring that McCullough receives the award that the jury intended and the values protected by FRE 606(b) are not violated. The amendment of the award in no way threatens the jury's freedom of deliberation. The district court judge was careful to limit his inquiry to whether the jury intended an award of $235,000 minus fifty per cent. He did not inquire into the thought processes of the jurors, but merely asked for clarification of the final award. Testimony on "matters other than their own inner reactions involves no particular hazard to the values sought to be protected." Fed.R. Evid. 606 advisory committee notes, *supra.*

Furthermore, the stability and finality of verdicts are not threatened. This is not a case like *Peveto, supra,* or *Howard, supra,* where considerable time elapsed before the jurors sought to amend the verdict. Here, only minutes elapsed before the jurors' attempt to rectify their mistake, and the defendant promptly became aware of the jury's final verdict.

Finally, the circumstances of this case present no danger of harassment of the jurors. Unlike *Peveto, supra,* and *Howard, supra,* the jurors themselves brought the mistake in the verdict to the court's attention. The short time between the adjournment of court and the jurors' revelation to the judge in the jury room assured that the amendment of the verdict stemmed from the jurors' own volition and not from any overreaching by the parties or their counsel.

## CONCLUSION

We hold that under the facts of this case, where all jurors agreed that by mistake a verdict other than that agreed upon had been delivered in court, amendment of the verdict does not violate FRE 606(b). We emphasize that our holding is narrow and limited to the facts of this case. Accordingly, the judgment of the district court is affirmed.