480 S.E.2d 170

**Jeffrey McDANIEL, Plaintiff Below, Appellee,**

v.

**Irene Adair KLEISS, Defendant Below, Appellant.**

**Jeffrey McDANIEL, Plaintiff Below, Appellant,**

v.

**Irene Adair KLEISS, Defendant Below, Appellee,**

and

**Aetna, The Standard Fire Insurance Company, Intervenor Below, Appellee.**

**Nos. 23115, 23328.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 1996.

Decided Dec. 9, 1996.

D. Michael Burke, Burke & Schultz, Martinsburg, for Jeffrey McDaniel.

Michael D. Lorensen, Bowles Rice McDavid Graff & Love, Martinsburg, for Irene Kleiss.

Paul B. Weiss, Martin & Seibert, Martinsburg, for Aetna.

WORKMAN, Justice:

Irene Adair Kleiss appeals from the April 4, 1995, order of the Circuit Court of Berkeley County whereby the circuit court increased the amount of damages previously awarded following a jury trial. Jeffrey McDaniel appeals from the June 29, 1995, order of the circuit court which conditioned the distribution of the sum of $100,000, previously deposited with the court by Ms. Kleiss, upon the posting of a bond or other satisfactory security. Upon a full review of the issues raised in these two appeals, we[1] find that the circuit court committed error by altering the jury award and accordingly, we reverse the April 4, 1995, order. Since the circuit court's order requiring Mr. McDaniel to post security before withdrawing funds deposited with the court is interlocutory and not subject to appeal, we find the petition for appeal was improvidently granted and accordingly dismiss the same for lack of appellate jurisdiction.

I. Factual and Procedural Background

In the underlying proceeding, Mr. McDaniel filed a negligence cause of action against Ms. Kleiss, seeking to recover for personal injuries sustained in an automobile accident that occurred on December 3, 1991. At the conclusion of the two-day jury trial on December 28, 1994, the jury found total damages in the amount of $154,283.42. The jury verdict was returned in open court; the verdict was read for the jury and the parties; and the jurors were polled with each individual juror affirming in the verdict. The jury concluded that Mr. McDaniel was contributorily negligent, apportioning his percentage of fault as forty percent and Ms. Kleiss' fault as sixty percent. After reducing the jury award by the forty percent liability assessed against Mr. McDaniel, the circuit court entered judgment, by order entered on January 13, 1995, in the amount of $92,893.80 plus prejudgment interest in the amount of $7,080.44 for a total award of $99,974.24.

Mr. McDaniel timely filed a motion to alter or amend the judgment on January 23, 1995, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure.[2] As grounds for this motion, Mr. McDaniel relied on his discovery that the jury had already deducted the forty percent liability apportioned to Mr. McDaniel in making its award of damages.[3]

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. That rule states that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of judgment." W. Va. R. Civ. P. 59(e).

3. This information was discovered when the jury foreperson, Alicia Hammond, inquired of the bailiff at the conclusion of the trial regarding whether Mr. McDaniel would receive the full amount of the damages that they had awarded. The bailiff then reported this information to the trial court. The record is unclear regarding the

He argued that the trial court's reduction of the jury award by forty percent reduced his damages improperly by assessing his percentage of fault against him a second time. Mr. McDaniel later filed a motion for relief from the final judgment order pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure,[4] asserting mistake as a basis for the relief sought.

The trial court heard arguments and took limited evidence [5] regarding both of these motions on April 4, 1995. With regard to the motion to alter and amend judgment, the court found

> that it is apparent from the face of the Jury verdict that the Jury intended to award the Plaintiff damages in the sum of $258,039.04 but the Jury made a technical and computational error by making a *sua sponte* deduction for the finding of 40% negligence and awarded the Plaintiff the net sum of $ 154,823.42 (after reducing their award by 40%), rather than the gross sum of $258,039.04.

The trial court concluded that the "Plaintiff has suffered the deduction of 40% for his negligence twice" and altered the judgment to the sum of $154,823.42 plus prejudgment interest of $30,615.95.

By separate order the trial court addressed the Rule 60(b) motion. In granting Mr. McDaniel's motion, the circuit court found

> that the difference between the total damages demanded by the Plaintiff, Jeffrey Lynn McDaniel[,] at the trial ($258,039.04) and the total damages awarded by the Jury ($154,823.42) is $103,215.62. The Court takes judicial notice that the sum of

$154,823.42 is precisely 60% of the damages proven by the Plaintiff. The Court FINDS and takes judicial notice thereof, that the difference between the $258,039.04 and $154,823.42, the sum of $103,215.62 is precisely 40% of the total damages. The Court FINDS that the award of damages to the Plaintiff, Jeffrey Lynn McDaniel, by the Jury consists of a 40% reduction from the total amount of damages demanded by the Plaintiff.

> . . . .

> The Court FINDS that the Jury made an obvious clerical error of form in its technique used in the entry of the damage awards on the Jury Verdict Form, and said error is apparent to the Court from the face of the Verdict Form.

> The Court FINDS that it was the manifest intention of the Jury to award the Plaintiff . . . the sum of $154,823.42 as total damages without any further reduction under comparative negligence procedure.

Ms. Kleiss appeals from the trial court's decision to modify the judgment under Rules 59(e) and 60(b) of the West Virginia Rules of Civil Procedure.

## II. DISCUSSION

### A. *Rule 59(e) of the West Virginia Rules of Civil Procedure*

This Court has previously addressed the inapplicability of Rule 59(e) for purposes of modifying a jury verdict. In *Investors Loan Corporation v. Long*, 152 W.Va. 673, 166 S.E.2d 113 (1969), we reversed a trial court's use of Rule 59(e) to alter a $1.00 judgment to $1,085.30, stating:

---

manner in which the parties learned of this information.

**4.** Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake,...." W. Va. R. Civ. P. 60(b).

**5.** The court heard testimony from the court bailiff and the jury foreperson. The bailiff testified regarding the foreperson's question posed to him concerning whether Mr. McDaniel was going to receive the full award they anticipated and her

comments upon learning that the trial court would reduce the verdict by the amount of fault apportioned to him. Ms. Hammond was questioned regarding the circumstances surrounding her attempts to reach the trial judge by telephone following the jury's discharge. Ms. Hammond, while testifying regarding her trip to the hospital for treatment of a migraine headache following the jury's discharge, inserted that the jury did not intend for the trial court to further reduce the award by forty percent. In response to this testimony, the trial court stated that it "would not consider it [her testimony] because I understand I cannot."

The provisions of the foregoing rule [59(a)], which are clear and unambiguous, authorize the court to grant a new trial upon motion in an action in which there has been a trial by jury, but they do not authorize the court in an action so tried, as in this case, to direct the entry of a new judgment. That may be done only in an action which has been tried without a jury. *A motion to alter or amend the judgment, under Rule 59(e), may be granted by the court in an action tried without a jury but not in an action in which there has been a trial by jury.*

152 W.Va. at 682, 166 S.E.2d at 118 (emphasis supplied).

 Thus, it is well-established that a trial court, "upon a motion to alter or amend a judgment under Rule 59(e)[,] may not enter a new judgment in an action in which there has been a trial by jury...." Syl. Pt. 4, in part, *Investors Loan Corp.*, 152 W.Va. at 674, 166 S.E.2d at 114. Accordingly, we find the circuit court's use of Rule 59(e) to alter the jury verdict in this case to be erroneous.

### B. *Rule 60(b) of the West Virginia Rules of Civil Procedure*

 Our examination of whether the trial court abused its discretion in modifying the judgment under Rule 60(b) requires a review of our holding in syllabus point one of *State v. Scotchel,* 168 W.Va. 545, 285 S.E.2d 384 (1981), that "[a] jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict." In *Scotchel,* we discussed the historical rationale for not allowing jury verdicts to be impeached by matters intrinsic[6] to the deliberative process:

The reason traditionally advanced to preclude impeachment of the jury verdict based on what occurred during the jury's deliberations is primarily grounded on public policy protecting the privacy of the jurors. This policy prevents both litigants and the public from being able to gain access to the jury's deliberative process. Inherent in this proposition is the recognition that ensuring the privacy of the jury's deliberations will promote a full, frank and free discussion of all the issues submitted to the jury. It is also recognized that the very nature of the deliberative process, which requires the jurors to arrive at a unanimous verdict, must of necessity require accommodation of individual views. This process of accommodation should not be utilized as a means to attack the general verdict. The rule against impeachment of the verdict also serves to prevent litigants from attempting to influence or tamper with individual jurors after the verdict has been rendered. There is also recognition that limiting impeachment promotes finality of jury verdicts.

168 W.Va. at 548, 285 S.E.2d at 387.

The portion of the verdict form completed in this case that pertains to the award of damages states:

Now state the total amount of damages you find were sustained by Jeffrey Lynn McDaniel:

| | |
|---|---|
| For all reasonable medical, hospital and related expenses incurred by Jeffrey McDaniel | $ 15,023.42 |
| For Jeffrey McDaniel's past and future physical pain and suffering | $ 6,000 |
| For Jeffrey McDaniel's past and future mental anguish | $ 6,000 |
| For the permanent injury suffered by Jeffrey McDaniel | $ 75,000 |

**6.** It is well-established that jury verdicts "may be impeached for matters of misconduct extrinsic to the jury's deliberative process." Syl. Pt. 2, in part, *Scotchel,* 168 W.Va. at 545, 285 S.E.2d at 385.

| | |
|---|---|
| For the residual effects of Jeffrey McDaniel's injuries which have reduced his capability to function as a whole person and for the impairment of his capacity to enjoy life | $ 6,000 |
| For past lost wages | $ 23,400.00 |
| For lost future earning or earning capacity | $ 23,400.00 |
| TOTAL: | $154,823.00 |

---

Ms. Kleiss argues, and we agree, that the jury verdict form undisputably is stated in terms of *total* damages. Nowhere on the verdict form is there any suggestion that the jurors were to adjust their determination of damages for that portion of fault attributable to Mr. McDaniel. Furthermore, the jurors were instructed by the circuit court to:

First, determine the total damages without reducing the amount for any fault of the plaintiff. The Court will do that later. Then, determine the plaintiff's percentage of fault. Then, determine the percentage of fault for the defendant and remember, the total of fault cannot exceed 100 percent.

Not only is this a correct statement of the law of comparative negligence, it is clearly and simply stated in a way that a jury could understand the instruction. Furthermore, lawyers have an opportunity during closing arguments to explain the concept in terms that might better assist a jury in its comprehension of the law.

■■ If in fact the jurors did reduce the amount of damages awarded to Mr. McDaniel before writing their damage calculations on the verdict form, this constitutes confusion regarding comparative negligence principles. A juror's confusion regarding the law is treated as intrinsic to the deliberative process itself. We explained in syllabus point three of *Scotchel,* that "[o]rdinarily, a juror's claim that he was confused over the law or evidence and therefore participated in the verdict on an incorrect premise is a matter that inheres in or is intrinsic to the deliberative process and cannot be used to impeach

the verdict." 168 W.Va. at 545, 285 S.E.2d at 385–86.

The grounds upon which Mr. McDaniel relied to impeach the jury award involve the deliberative process itself. Despite the circuit court's attempt to characterize the issue as one involving a clerical mistake, the court had to rely on the statements of the jury foreperson that were offered in the way of a proffer to the court concerning the resulting double deduction for Mr. McDaniel's contributory negligence.[7] We reach this conclusion because a clerical error is simply not apparent from the face of the jury verdict form. As the Eighth Circuit Court of Appeals recognized in *Karl v. Burlington Northern Railroad Co.,* 880 F.2d 68 (8th Cir.1989),

[t]he mistake made by the jury in this case ... is not "clerical," but goes to the "validity" of the verdict. A clerical error would be one where the foreperson wrote down, in response to an interrogatory, a damage amount different from that agreed upon by the jury, ... or where the foreperson mistakenly stated that the defendant was "guilty" when the jury had actually agreed that the defendant was not guilty,.... The error alleged here, however, involves more than just a clerical mistake by the jury, as it involves the jury's understanding of the court's instructions.

*Id.* at 74 (citations omitted). If the jury did wrongly deduct for McDaniel's apportionment of fault in writing down its award of damages, this constitutes misapplication of the law, but not a clerical error. Clerical mistakes are separately addressed by the provisions of Rule 60(a) of the West Virginia Rules of Civil Procedure.[8]

---

7. The record indicates that while Alicia Hammond was not permitted to testify regarding the jury's mistake, Mr. McDaniel's counsel was permitted to proffer the evidence that she would testify to if permitted by the circuit court to

address the specifics of her concern that the jury made a mistake.

8. Rule 60(a) provides, in pertinent part, that Clerical mistakes in judgments, orders or other parts of the record and errors therein arising

Since 1994, a rule of evidence has been in place which specifically addresses the parameters of inquiring into a jury verdict. Rule 606(b) of the West Virginia Rules of Evidence states that:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

That the attorneys and the court were aware of Rule 606(b) is evident from the record.[9] However, the circuit court appears to have attempted to circumscribe Rule 606(b)'s prohibition against inquiring into the jury verdict by relying on the proffer of evidence that the jury foreperson could testify to, if permitted, in concluding that a clerical mistake was evident from the jury verdict form.[10] For without reference to the testimony of Ms. Hammond, the circuit court could not be certain that the jury wrongly reduced the amount of damages awarded to Mr. McDaniel. Only by relying on the evidence that pertains to the deliberative process itself could the circuit court reach the conclusion that it did. There simply is no patent computational error on the jury verdict form itself.

This Court is not unmindful that a school of thought does exist which supports treating jury error with regard to comparative negligence cases in a separate fashion from other cases involving misapplication of the law. In *McCullough v. Consolidated Rail Corp.*, 937 F.2d 1167 (6th Cir.1991), the jury foreman inquired of the trial judge at the conclusion of the trial,[11] with the rest of the jury present, whether the plaintiff would receive the full amount of damages awarded by the jury. *Id.* at 1168. When the jury learned that the award would be reduced by fifty percent because of a finding of contributory negligence and indicated this was contrary to the jury's intention, the court reconvened the jury. The jury foreperson informed the court that its intention was for the plaintiff to receive the full amount of the award and the trial court entered judgment for the entire amount awarded without deducting for the plaintiff's percentage of fault. In affirming the district's court's decision to modify the judgment under Rule 60(b), the Court of Appeals concluded that "[t]he amendment of the award in no way threatens the jury's freedom of deliberation." 937 F.2d at 1172; *see also Attridge v. Cencorp Div. of Dover Technologies Int'l, Inc.*, 836 F.2d 113, 117 (2d Cir.1987) (affirming trial court's modification of jury award in comparative negligence case on grounds that reconvening of jury was "designed to ascertain what the jury decided and not why they did so"); David A. Christman, Note, *Federal Rule of Evidence 606(b) and the Problem of "Differential" Jury Error*, 67 N.Y.U. L.Rev. 802, 811–31 (1992) (discussing idea that Rule 606(b) is ill-equipped to respond to "differential error" that results when jury formulates its damage award "on the mistaken belief that the figure it provides will be the net award to the plaintiff").

In each of the cases cited by Mr. McDaniel in support of his argument that the court should be permitted to modify the jury verdict in a comparative negligence case where the jury wrongly records the net figure of

---

from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

W. Va. R. Civ. P. 60(a).

**9.** *See supra* note 4.

**10.** *See infra* note 12.

**11.** The inquiry was made when the trial judge went into the jury room to thank the jurors for their service. 937 F.2d at 1168.

damages rather than the gross figure, the juries were reconvened in their entirety within one day or less of the verdict's return. We are not presented with the same factual scenario in this case. Here, only one juror was ever brought back before the trial court and this did not occur until more than three months after the verdict had been returned. Even those who approve of jury verdict inquiry when the jury's intent in making its award in a comparative negligence case comes under question recognize that one factor which has to be examined is the amount of time that has passed since the verdict was entered. *See* Note, 67 N.Y.U. L.Rev. at 836.[12]

In *Plummer v. Springfield Terminal Railway Co.,* 5 F.3d 1 (1st Cir.1993), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1057, 127 L.Ed.2d 377 (1994), the trial court, upon learning that the jury wrongly deducted from its award the twelve percent negligence that it had assessed against the plaintiff, refused to reconvene the jury and denied plaintiff's motion to alter the judgment. *Id.* at 2–3. The Court of Appeals rejected plaintiff's arguments that either the trial court should have conducted a jury voir dire or that he should have been permitted to question the jury to determine whether the damage award was reduced to account for his negligence. Determining that a voir dire would be in violation of Rule 606(b) of the Federal Rules of Evidence, the appellate court reasoned:

> The court in that case [*Karl*] found that the inquiry was improper because it went to the thought processes underlying the verdict, rather than the verdict's accuracy in capturing what the jurors had agreed upon.
>
> We agree ... that *Karl's* approach better reflects the goals of Rule 606(b) ... because it better insulates jury deliberations. In the present case, the verdict

form, which the judge went over with the jury, instructed the jury not to reduce the damages verdict based on Plummer's [plaintiff's] negligence, and Plummer never objected to these instructions. Plummer's current allegations, however, suggest that the jurors believed that the rendered verdict would have a different effect on the parties, based on their understanding of the court's instructions. Plummer does not contend that the jurors never agreed upon the rendered verdict—the number that the jury chose is not in dispute. Accordingly, the requested inquiry went to what the jurors were thinking when they chose the number that they did and whether their thinking was sound.

5 F.3d at 4 (footnotes and citations omitted); *see also Karl,* 880 F.2d at 75 (concluding that district court wrongly relied on jury affidavits regarding jury's deduction of plaintiff's liability from award stating that "[f]ar from a simple error in transmission or in putting words or figures to paper, it is the jurors' mental processes that gave rise to the concerns at issue").

For the reasons expressed in *Plummer,* we conclude that when a trial court modifies a judgment entered pursuant to a jury verdict in a comparative negligence case based on juror testimony or a proffer of evidence[13] that the jury wrongly deducted the plaintiff's apportionment of fault in arriving at its damage award, the court wrongly invades the jury's deliberative process in violation of Rule 606(b) of the West Virginia Rules of Evidence. *See* 5 F.3d at 4. Were we to hold otherwise, this Court would be inviting reexamination of every jury verdict that is reached through the jury's misapplication of legal principles. We decline to set the stage for such a dangerous precedent that would undermine the historically valid basis for avoiding impeachment of jury verdicts on

---

**12.** The other factors that this commentator suggests must be examined are the likelihood that all of the jurors would agree that an error was committed; the source of the evidence; and the existence of an identifiable alternative verdict. Note, 67 N.Y.U. L.Rev. at 836–37.

**13.** Mr. McDaniel's counsel, as well as the trial court, appear to assume that they avoided the proscribed inquiry into the jury verdict by relying

on a proffer of what Alicia Hammond's testimony would be regarding the purported jury error. A proffer of evidence cannot be utilized to avoid the requirements of Rule 606(b). *See* Stephen A. Saltzburg and Michael M. Martin, *Federal Rules of Evidence Manual* 548 (5th ed.1990) (stating that "[i]f testimony is barred by section (b) [of Rule 606], other forms of proof are also barred").

grounds intrinsic to the deliberative process itself. *See Scotchel,* 168 W.Va. at 548, 285 S.E.2d at 387. Accordingly, we conclude that the circuit court abused its discretion in modifying the original judgment pursuant to Rule 60(b). *See Johnson v. Nedeff,* 192 W.Va. 260, 266, 452 S.E.2d 63, 69 (1994) (recognizing that standard of review governing Rule 60(b) motions is abuse of discretion).

C. *Order Requiring Posting of Security*

██ Mr. McDaniel appeals from the circuit court's order of June 29, 1995, requiring him to "give bond or other satisfactory security for such funds as may be distributed to him by Order of the Court." In response to Mr. McDaniel's motion for a distribution of funds deposited by Ms. Kleiss with the circuit court,[14] the trial court required that he first post security before being permitted to withdraw such funds. We ruled in syllabus point three of *James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995), that

> [u]nder W. Va.Code, 58–5–1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

Because we determine that the order requiring the posting of security was an interlocutory order not subject to appeal, we are without appellate jurisdiction to address the issues raised in this separate petition for appeal. *Cf., Coleman v. Sopher,* 194 W.Va. 90, 95, 459 S.E.2d 367, 372 (1995) (recognizing that West Virginia Code § 58–5–1(i) permits appeals from certain types of interlocutory appeals).

Based on the foregoing, we reverse the circuit court's ruling in modifying the judgment order and direct that the original judgment order of January 13, 1995, be reinstated. Having determined that the petition for appeal that challenges the circuit court's ruling requiring the posting of security is an interlocutory ruling not subject to appeal, we dismiss the petition as improvidently granted.

14. The funds deposited by Ms. Kleiss represented the limits of her liability insurance. These funds were deposited by leave of the circuit court pursuant to Rule 67 of the West Virginia Rules of Civil Procedure.

Civil Action No. 23115—Reversed;

Civil Action No. 23328—Dismissed.

RECHT, Judge, sitting by temporary assignment.