**FILED**

**May 18, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Rexroad Heating and Cooling, LLC,**
**A West Virginia Limited Liability Company,**
**and Doug Brake,**
**Defendants Below, Petitioners**

**vs.) No. 20-0848** (Monongalia County 16-C-615)

**Vanessa Lynn Vance,**
**Executrix of the Estate of Jackie**
**Blaine Koontz, deceased,**
**Plaintiff Below, Respondent**

**MEMORANDUM DECISION**

Petitioners Rexroad Heating and Cooling, LLC, a West Virginia Limited Liability Company ("Rexroad"), and Doug Brake ("Mr. Brake) (collectively "the Rexroad Petitioners") by counsel Donald J. McCormick, appeal from the September 24, 2020 order of the Circuit Court of Monongalia County denying their motion for relief from judgment or order, or, in the alternative, motion for a new trial. Respondent Vanessa Lynn Vance,[1] as executrix of Mr. Koontz's estate, by counsel Jeffery D. Van Volkenburg and Debra Tedeschi, filed a response in support of the circuit court's order. The Rexroad Petitioners filed a reply.

Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we find that the circuit court committed error by invading the province of the jury and sua sponte altering the jury award. Accordingly, we reverse the circuit court's September 24, 2020 order to the extent it denied the Rexroad Petitioners' motion for relief from judgment or order, or, in the alternative, motion for a new trial.[2] We additionally

---

[1] The underlying matter and Respondent's brief initially named Jackie Blaine Koontz, Mr. Koontz's wife, as executrix of the estate. However, during the pendency of this matter, the Circuit Clerk of Preston County issued a Letter of Appointment designating Vanessa Lynn Vance, Mrs. Koontz's daughter, as the new executrix of the estate. Accordingly, Mrs. Koontz moved this Court to substitute Vanessa Lynn Vance as Respondent in this matter. By Order entered, April 8, 2022, this Court granted said motion.

[2] Respondent did not cross-appeal the circuit court's order to the extent that it denied her motion for additur. Moreover, the Rexroad Petitioners did not specifically assign error to the circuit court's order to the extent it awarded pre-judgment interest or how it calculated the pre-

1

remand this case for further proceedings consistent with this opinion. Because this case does not present a new or significant issue of law, and for the reasons set forth herein, we find this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

On August 9, 2016, on the Interstate in Monongalia County, a motorcycle driven by Jackie Blaine Koontz ("Mr. Koontz") collided with a pick-up truck operated by Mr. Brake. At the time of the accident, Mr. Brake was driving the pick-up truck back to his employer, Rexroad. Mr. Koontz died as a result of this accident. In December of 2016, Mr. Koontz's wife, Velva Darleen Koontz ("Mrs. Koontz"), as executrix of Mr. Koontz's estate, filed a complaint against the Rexroad Petitioners, asserting negligence and wrongful death and seeking monetary damages. The Rexroad Petitioners filed an answer and affirmative defenses wherein they raised the defense of Mr. Koontz's comparative negligence. Ultimately, the matter proceeded to trial.

The three-day trial began on August 18, 2020. Relevant to this appeal, Mrs. Koontz offered the testimony of Daniel Selby ("Mr. Selby") as an expert "in the realm of forensic accounting." Mr. Selby testified that based, at least in part, upon standard mortality tables and assuming Mr. Koontz lived to the age of eighty-four, the present-day value of the loss of Mr. Koontz's social security benefits was $312,413.00 and the loss of Mr. Koontz's pension benefits was $65,427.00.[3] Finally, Mr. Selby stated that the present-day value of the loss of his household services was $296,658.00 if Mr. Koontz lived to the age of eighty. Mrs. Koontz testified as to her losses and the parties stipulated to a total of $14,395.52 for funeral costs and medical expenses.

After the conclusion of the evidence, the circuit court instructed the jury, in relevant part, that "[i]f Jackie Blaine Koontz's negligence, if any, was equal to or less than the negligence of the defendants, then plaintiff's damages will be reduced by the percentage of Jackie Blaine Koontz's negligence." The circuit court further instructed that

> [i]f you find that Jackie Blaine Koontz was negligent and it was less than or equal to defendants['] negligence do not reduce any money damages that you may award plaintiff by the percentage of Jackie Blaine Koontz's fault. I will reduce plaintiff's damages by the percentage that you find Jackie Blaine Koontz was at fault. I will calculate the actual reduction after you return your verdict.

In addition, the circuit court provided the jury with instructions regarding the required showing and burden of proof to recover for loss of household services, pension income, social security income, and reasonable medical and funeral expenses. Furthermore, the circuit court instructed

---

judgment interest. Therefore, our review of the circuit court's September 24, 2020 order is confined to that portion of the order denying the Rexroad Petitioners' motion for relief from judgment or order, or, in the alternative, motion for a new trial.

[3] At trial a document was admitted that indicated all the present-day values of lost pension income for each age between sixty-seven to eighty-four years old.

[i]f you decide that plaintiff has suffered damages for the loss of household services and/or loss of pension services, and/or loss of social security benefits due to the death of Jackie Blaine Koontz, you may take into consideration the mortality tables introduced into evidence, if any, which show the likely duration of Jackie Blaine Koontz's life. You may also rely on the testimony of expert witnesses that discussed mortality tables and Jackie Blaine Koontz's life expectancy. The mortality tables are evidence of how long a person is likely to live, but the tables are not conclusive. In deciding a person's life expectancy you may also consider among other factors, Jackie Blaine Koontz's health, habits, activities[,] and lifestyle.

The circuit court also instructed the jury that if they "decide that plaintiff's harm includes future economic damages for loss of various pensions, household services, and Social Security earnings, then the amount of those future damages must be reduced to their present dollar value." Moreover, the jury could "consider expert testimony in determining the present dollar value of future economic damages." The jury was further instructed that

[t]he mere fact that you have been given instructions on the law of damages does not imply or suggest that any such damages are due. Whether damages are due is for you to decide. These instructions on the measure of damages are only given for your guidance in the event that you find in favor of the plaintiff by a preponderance of evidence.

The jury rendered its verdict on August 20, 2020. Prior to the verdict being read, the circuit court asked to have the verdict form given to the bailiff. Specifically, the court stated that "[w]hen I look at the verdict form I look at it to make sure that it's filled out correctly and no mistakes have been made." Then, the verdict form was given to the clerk to be read. The jury determined that Mr. Koontz was fifty percent at fault for the vehicle accident and the Rexroad Petitioners were fifty percent at fault. Furthermore, the jury determined that Mrs. Koontz's total damages were as follows: $0 for loss of household services; $186,660 for loss of social security benefits; $47,420 for loss of pension plan; $14,395.52 for hospital and funeral expenses; [4] and $0 for sorrow and mental anguish. After the jury returned its verdict, neither party raised any issue nor requested the court to poll the jury. Accordingly, the circuit court informed the jury that their work was complete.

Despite its earlier statement that the jury's work was finished, the circuit court suddenly told the jury not to leave.[5] The circuit court then inquired of the jury foreperson as to whether the jury had already reduced the verdict by the percentage of fault. The circuit court and the jury foreperson engaged in the following dialogue:

---

[4] This amount was stipulated by the parties.

[5] There was a discussion off the record, but there is no indication in the transcript as to what occurred during that discussion.

3

The Court: Okay. [Jury foreperson], please understand why I'm asking this. You may recall that in the instructions I said that if there - - I'm going to paraphrase it, but if there was a split in the assessment of negligence that you should come to the number [of] damages and I would do the math on that. Remember that?

Foreperson: Yes.

The Court: Okay. So, I just want to confirm on the record that the damages that you have filled out were not just automatically mathematically reduced by any assessment of the negligence. These are the true numbers that you found?

Foreperson: Like in the documents?

. . . .

The Court: I can't understand. I'm so sorry. Can you stand up and please just take your mask off for one minute.

Foreperson: I said are you asking like if those are like the totals from like the documents that had like the numbers, or I'm not sure if I fully understand.

The Court: Did you reach a number and then reduce it to get to these numbers?

Foreperson: Yes. I think, if I'm understanding.

Juror: No, we didn't.

Juror: No.

Foreperson: I don't still understand [sic]. I'm sorry.

Following this exchange, the court and all counsel held a sidebar conference. During this side discussion, the circuit court stated that it questioned the verdict because the numbers awarded were different from the numbers testified to at trial. The court further indicated that

what [the jury] may have done [was] reduced it to present value, and I don't know. And what I was concerned about is there is somewhere in here that if they have a split in the negligence that they are to come to the number and I will make the reduction. I'm just trying to make sure that that is what they did. And I think that's what they did.

The circuit court further explained that

I think what they may have done is not accept the figure based on his age that he may reach. So, I don't have any problem with that. . . . So, I'm going to add all of

4

this up and reduce it by fifty percent, and it's all good. I want you in agreement before we leave today if we need more time, do you follow me?

The court then went back on the record and began to divide the numbers awarded by the jury in half. After informing the jury that it had awarded Mrs. Koontz the dollar amounts found in the verdict form and that she was going to divide it by half, the court asked the jury if that was their intention and two jurors responded, "No." The court and counsel then held a second sidebar conference. During this discussion, the court formulated a question to ask each member of the jury: "Do the numbers written on the verdict form reflect the amount you intended to award plaintiff in total or the number you want the Court to reduce by the percentage you found plaintiff's decedent to be negligent?" Counsel for Rexroad Petitioners objected to the question; however, the court overruled the objection and posed the question to each member of the jury. The first juror responded: "The amount is what I wanted awarded." Upon further inquiry, the juror responded that she did not want the court to reduce the award by fifty percent. The court then called several other jurors by name, and each simply responded "yes." At that point, the court decided that the jury had already reduced the amount of the award and further decided it was going to either manually double the figures and have the jury sign off on it or that it would accept the jurors' testimony. Counsel for the Rexroad Petitioners objected to "all of it." The circuit court then dismissed the jury.

The next day, on August 21, 2020, the circuit court entered an order accepting the verdict wherein the court doubled the verdict from $248,475.52 to $496,951.04[6] and then reduced the verdict by fifty percent based upon Mr. Koontz's comparative fault.[7] In its order, the circuit court justified its modification of the jury verdict as follows:

> [I]t became clear that the Jury misunderstood the Verdict Form and the Jury Charge, and therefore did not answer Question No. 6 correctly.

---

[6] Specifically, the circuit court adjusted the original jury verdict to the following numbers:

> Loss of Household Services: $0
> Loss of Social Security Benefits: $373,320.00
> Loss of Pension Plan: $94,840.00
> Hospital and Funeral Expenses: $28,791.04
> Sorrow and Mental Anguish: $0

[7] Once the circuit court reduced the award by fifty percent, Mrs. Koontz was awarded the following:

> Loss of Household Services: $0
> Loss of Social Security Benefits: $186,660.00
> Loss of Pension Plan: $47,420.00
> Hospital and Funeral Expenses: $14,395.52
> Sorrow and Mental Anguish: $0

The Court, after discussion with counsel, confirmed with each member of the Jury that the Jury unanimously agreed that the amounts listed in Question No. 6 accurately reflected the amounts in total that the Jury intended [Mrs. Koontz] in the above-referenced matter to be awarded, and not the amounts that the Jury intended the Court to reduce by the percentage of negligence the Jury assigned [Mrs. Koontz's] decedent, Jackie Blaine Koontz, in Question No. 5 of the Verdict Form.

On August 31, 2020, the Rexroad Petitioners filed a motion for relief from judgment or order pursuant to Rules 59(e)[8] and 60(b)[9] of the West Virginia Rules of Civil Procedure, or, in the alternative a motion for a new trial pursuant to Rule 59(a)[10] of the West Virginia Rules of Civil Procedure. In their memorandum in support of their motion, the Rexroad Petitioners asserted that the "jury's responses on the Verdict Form were clear, plain, and unambiguous on their face, and the [c]ourt should not have queried the jurors on what they intended, especially in the absence of such a request by any of the parties." Accordingly, the Rexroad Petitioners contended that the circuit court improperly inquired into the jury's deliberative process. The Rexroad Petitioners

---

[8] Rule 59(e) of the West Virginia Rules of Civil Procedure provides that "[a]ny motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment." W. Va. R. Civ. P. 59(e). *Id.*

[9] Rule 60(b), in relevant part, provides:

[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . *(6) any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time[.] A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court.

*Id*. (emphasis added).

[10] Rule 59(a) of the West Virginia Rules of Civil Procedure provides that

[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

*Id*.

further argued that the circuit court "substituted its own verdict on damages in amounts which *exceeded the evidence presented by [Mrs. Koontz] at trial in each category currently at issue*[.]" Mrs. Koontz filed a response in opposition.

On September 4, 2020, Mrs. Koontz filed a motion requesting additur and for imposition of prejudgment interest, which the Rexroad Petitioners opposed. The circuit court then held a hearing on the parties' respective post-trial motions.[11] Following the hearing, the circuit court entered an order on September 24, 2020, denying the Rexroad Petitioners' motion for relief from judgment or order, or, in the alternative, motion for a new trial. The circuit court also denied Mrs. Koontz's motion for additur but granted the request for imposition of prejudgment interest in the amount of $56,489.03. This appeal followed.

The Rexroad Petitioners filed their post-trial motion based on Rules 59(e) and 60(b)[12] of the West Virginia Rules of Civil Procedure.[13] This Court has held that

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard

---

[11] The parties did not include the transcript of this hearing in the appendix record on appeal.

[12] In footnote five of *Savage v. Booth*, 196 W. Va. 65, 68 S.E.2d 318 (1996), we explained the following regarding the relationship of Rule 59(e) and Rule 60 motions:

> Rule 59(e) and Rule 60 provide for different motions directed to similar ends. Rule 59(e) governs motions to "alter or amend" a judgment. Rule 60, which is divided into two distinct but important sections, governs requests for relief from a judgment or order for various listed reasons. Rule 59(e) generally requires a lower threshold of proof than does Rule 60(b), but each motion seeks to erase the finality of a judgment and to allow further proceedings. Rule 59(e) contains a strict ten-day limit, while Rule 60(b) allows an eight-month period, sometimes more. We establish a bright-line rule for distinguishing Rule 59(e) motions from Rule 60(b) motions. The time of a motion's service controls whether a motion challenging a judgment is a Rule 60(b) or Rule 59(e) motion. Such a motion, if served within ten days of a final judgment is a Rule 59(e) motion. Conversely, a motion served more than ten days after a final judgment is a Rule 60(b) motion.

*Id.* at 68 n.5, 468 S.E.2d at 321 n.5. Furthermore, this Court has held that a court

> upon a motion to alter or amend a judgment under Rule 59(e) may not enter a new judgment in an action in which there has been a trial by jury; and a new judgment entered by the court in an action in which there has been a trial by jury is erroneous and will be set aside upon appeal.

Syl. Pt. 4, in part, *Invs. Loan Corp. v. Long*, 152 W. Va. 673, 166 S.E.2d 113, (1969); *accord* Syl. Pt. 1, *McDaniel v. Kleiss*, 198 W. Va. 282, 480 S.E.2d 170 (1996).

[13] The Rexroad Petitioners alternatively filed a motion for a new trial pursuant to Rule 59(a) of the West Virginia Rules of Civil Procedure.

that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). Specifically, we examine the standard applicable to questions of law, which are subject to a de novo review, to resolve the propriety of the circuit court's altering a jury verdict without any legal authority to do so. *See Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995) ("Questions of law are subject to a *de novo* review."). We are also mindful that

> "[a] motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R. C. P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. Pt. 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

Syl. Pt. 4, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019).

The determinative issue before this Court is whether the circuit court improperly invaded the jury's deliberative process in violation of Rule 606(b)[14] of the West Virginia Rules of Evidence and improperly doubled the jury verdict.[15] The Rexroad Petitioners assert that the circuit court "erred when it failed to receive and enter the [v]erdict as rendered by the jury and when it invaded the province of the jury by *sua sponte* inquiring into the jury's deliberative process." In particular, the Rexroad Petitioners contend that when the circuit court sua sponte questioned each juror regarding his or her intentions after the verdict was delivered, and then modified the judgment entered based upon that questioning, the circuit court improperly invaded the jury's deliberative

---

[14] Rule 606(b) of the West Virginia Rules of Evidence provides as follows:

> (b) *During an inquiry into the validity of a verdict or indictment*.
> (1) *Prohibited testimony or other evidence. — During an inquiry into the validity of a verdict* or indictment, *a juror may not testify about* any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or *any juror's mental processes concerning the verdict* or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
> (2) *Exceptions. —* A juror may testify about whether:
> (A) extraneous prejudicial information was improperly brought to the jury's attention;
> (B) an outside influence was improperly brought to bear on any juror; or
> (C) a mistake was made in entering the verdict on the verdict form.

*Id*. (some emphasis added).

[15] The Rexroad Petitioners raised several assignments of error; however, given our resolution, we need not reach any remaining assignments of error.

8

process pursuant to Rule 606(b). Conversely, Respondent argues that the "circuit court's post-trial order properly entered judgment to reflect the intent of the jury and cure the jury's confusion concerning the application of its comparative fault finding." We disagree with Respondent.

It is well-established that "[w]hen the verdict of a jury is in proper form, is duly signed by its foreman, and represents the final agreement of the jury, it should be received and entered by the trial court." *Toler v. Hager*, 205 W. Va. 468, 476, 519 S.E.2d 166, 174 (1999) (internal quotations and citation omitted). When the verdict was returned there was nothing on the face of the verdict form to indicate that there may be an issue; there was nothing inconsistent regarding the verdict form itself. The numbers awarded were all within a reasonable range suggested by the evidence at trial, and the medical and funeral expenses were the exact amount stipulated to by the parties. In addition, when asked by the court if they wished to poll the jury, both parties declined.

Significantly, this Court previously examined an issue very similar to the one presented in this matter. In *McDaniel v. Kleiss*, 198 W. Va. 282, 480 S.E.2d 170 (1996), the underlying proceeding involved a negligence cause of action "seeking to recover for personal injuries sustained in an automobile accident[.]" *Id.* at 284, 480 S.E.2d at 172. Following a jury trial, the jury returned a verdict that was read in open court. *Id.* The jurors were polled with each individual juror in agreement with the verdict. *Id.* Specifically, the jury found total damages in the amount of $154,283.42, and further concluded that the plaintiff was contributorily negligent, apportioning his percentage of fault as forty percent and the defendant's fault as sixty percent. *Id.* Following the reading of the verdict, the circuit court reduced the jury award by the forty percent liability assessed against the plaintiff and entered judgment. *Id.*

Subsequently, counsel for the plaintiff filed a motion to alter or amend the judgment and a motion for relief from the final judgment order. *Id.* Counsel for the plaintiff "relied on his discovery that the jury had already deducted the forty percent liability apportioned to [the plaintiff] in making its award of damages." *Id.* The circuit court held a hearing and took evidence, including testimony of the jury foreperson. *Id.* at 285, 480 S.E.2d at 173. Following the hearing, the court found that "it was the manifest intention of the [j]ury to award" the plaintiff "the sum total of $154,823.42 as total damages without any further reduction under comparative negligence procedure." *Id.* The court further decided that the jury had "made an obvious clerical error." *Id.* As such, the circuit court altered the judgment award accordingly. *Id.* The defendant then appealed that order to this Court. *Id.*

On appeal, after thorough consideration of the case law, we reiterated our previous holding that "'[a] jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict.' Syl. Pt. 1, *State v. Scotchel*, 168 W. Va. 545, 285 S.E.2d 384 (1981)." *McDaniel*, 198 W. Va. at 286, 480 S.E.2d at 174, Syl. Pt. 2. We further reiterated that,

> "[o]rdinarily, a juror's claim that he was confused over the law or evidence and therefore participated in the verdict on an incorrect premise is a matter that inheres in or is intrinsic to the deliberative process and cannot be used to impeach the verdict." Syl. Pt. 3, *State v. Scotchel*, 168 W. Va. 545, 285 S.E.2d 384 (1981).

9

*McDaniel*, 198 W. Va. at 287, 480 S.E.2d at 175, Syl. Pt. 3. Finally, in syllabus point 4 of *McDaniel*, we held that

> [w]hen a trial court modifies a judgment entered pursuant to a jury verdict in a comparative negligence case based on juror testimony or a proffer of evidence that the jury wrongly deducted the plaintiff's apportionment of fault in arriving at its damage award, the court wrongly invades the jury's deliberative process in violation of Rule 606(b) of the West Virginia Rules of Evidence.

198 W. Va. at 289, 480 S.E.2d at 177, Syl. Pt. 4.

Respondent argues that we should not follow our previous holdings in *McDaniel*, but rather we should look to a Sixth Circuit Court of Appeals case, *McCullough v. Consolidated Rail Corporation*, 937 F.2d 1167 (6th Cir. 1991), for guidance. In *McCullough*,

> [a]fter the verdict was returned, the judge went into the jury room to thank the jurors for their service. At that time, the jury foreman asked whether the plaintiff would receive the entire $235,000. The judge informed the jurors that because of the finding that McCullough was fifty per cent contributorily negligent, the $235,000 verdict would be reduced by fifty per cent. The foreman and several other jurors stated that they had deducted fifty per cent from the verdict and intended the net recovery to be $235,000.

*Id.* at 1168. The court ruled that "where all jurors agreed that by mistake a verdict other than that agreed upon had been delivered in court, amendment of the verdict does not violate FRE [Federal Rule of Evidence] 606(b)." *Id.* at 1172. The *McCullough* Court reasoned that this was a mistake and amending the verdict under the specific facts of this case, within minutes of rendering the verdict, did not violate the spirit of Rule 606(b) of the Federal Rules of Evidence which is to promote "'freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment.'" *Id.* at 1169, 1172 (quoting Fed. R. Evid. 606(b)).

Relying on *McCullough*, Respondent argues that the jurors in this case simply made "[a] mistake" "due to a misapprehension of the law[.]" We are not persuaded by Respondent's argument, as we previously examined *McCullough* in our *McDaniel* decision and rejected the Sixth Circuit's reasoning. *See McDaniel*, 198 W. Va. at 288-90, 480 S.E.2d at 176-78.[16]

---

[16] Moreover, since the Sixth Circuit decided *McCullough* and we decided *McDaniel*, Rule 606(b) of the Federal Rules of Evidence and Rule 606(b) of the West Virginia Rules of Evidence were both amended. Specifically, in 2006, the Federal Rule 606(b) was "amended to provide that juror testimony may be used to prove that the verdict reported was the result of a mistake in entering the verdict on the verdict form." Fed. R. Evid. 606 advisory committee's note to 2006 amendment. The Advisory Committee Notes shed important light on this amendment. Pursuant to the Advisory Committee Notes, "[t]he amendment responds to a divergence between the text of the Rule and the case law that has established an exception for proof of clerical errors." *Id.* The Advisory Committee Notes further elaborate on the amendment as follows:

Consequently, pursuant to the principles of *Scotchel* and *McDaniel*, the circumstances of the matter sub judice necessitate the conclusion that the circuit court erred. Here, the verdict form was clear that the jury was to "state the *total* amount of damages for each category of damages listed[.]" (Emphasis added). Similar to the verdict form in *McDaniel*, "[n]owhere on the verdict form is there any suggestion that the jurors were to adjust their determination of damages for that portion of fault attributable to [Mr. Koontz]." 198 W. Va. at 288, 480 S.E.2d at 176. In addition, the circuit court explicitly instructed the jury that if they find comparative fault, "I [the court] will reduce plaintiff's damages by the percentage that you [the jury] find Jackie Blaine Koontz was at fault. I [the court] will calculate the actual reduction after you return your verdict." Moreover, "lawyers have an opportunity during closing arguments to explain the concept [of comparative fault] in terms that might better assist a jury in its comprehension of the law." *Id*. at 287, 480 S.E.2d at 175.

Additionally, this is not an instance where a clerical mistake was made. There is nothing in the record to suggest that the jurors all agreed on a certain number, but due to clerical error or mistake, another number was entered on the verdict form.[17] Instead, the circuit court altered the verdict on the basis that the jurors were confused or misunderstood how to apply the comparative fault law to the verdict. This rationale is exactly what the *Scotchel* Court found to be an invasion of the deliberative process and could not be used to impeach a verdict. *See* 168 W.Va. at 552, 285 S.E.2d at 389, Syl. Pt. 3. As in *McDaniel*, "[i]f in fact the jurors did reduce the amount of damages awarded to [Mrs. Koontz] before writing their damage calculations on the verdict form, this constitutes confusion regarding comparative negligence principles. A juror's confusion regarding the law is treated as intrinsic to the deliberative process itself." 198 W. Va. at 287, 480 S.E.2d at 175. Simply put, by questioning each member of the jury regarding the amounts each intended to

_____

[i]n adopting the exception for proof of mistakes in entering the verdict on the verdict form, the amendment specifically rejects the broader exception, adopted by some courts, permitting the use of juror testimony to prove that the jurors were operating under a misunderstanding about the consequences of the result that they agreed upon. *See, e.g.*, *Attridge v. Cencorp Div. of Dover Techs. Int'l, Inc.*, 836 F.2d 113, 116 (2d Cir. 1987); *Eastridge Development Co. v. Halpert Associates, Inc.*, 853 F.2d 772 (10th Cir. 1988). *The broader exception is rejected because an inquiry into whether the jury misunderstood or misapplied an instruction goes to the jurors' mental processes underlying the verdict, rather than the verdict's accuracy in capturing what the jurors had agreed upon.*

*Id.* (emphasis added). Subsequently, in 2014, Rule 606(b) of the West Virginia Rules of Evidence was amended for clarity and is substantively the same as the previous version except for its inclusion of Rule 606(b)(2)(C). As such, the current Rule 606(b) of the West Virginia Rules of Evidence reads verbatim to its federal counterpart.

[17] In fact, towards the conclusion of the discussion regarding the jury verdict, the circuit court explicitly asked the jury foreperson, "The only thing I want to know from you is when you wrote down these numbers was everybody in agreement at that time?" The jury foreperson said, "Yes."

award Mrs. Koontz, the circuit court wrongly invaded the deliberative process of the jury and had no legal authority to modify the jury award.

For the reasons set forth herein, we reverse the circuit court's September 24, 2020 order to the extent it denied the Rexroad Petitioners' motion for relief from judgment or order. Furthermore, on remand we direct that the circuit court reinstate the original damages findings of the jury's August 20, 2020 verdict form, and enter a judgment order properly accounting for a reduction of the jury's verdict by the comparative negligence reflected on the August 20, 2020 verdict form.[18]

Reversed and Remanded with Directions.

**ISSUED:** May 18, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice C. Haley Bunn

---

[18] As noted herein, the Rexroad Petitioners have not appealed the circuit court's awarding of pre-judgment interest or the process for calculating the amount of pre-judgment interest awarded below. Accordingly, those findings will not be disturbed; however, because we are directing that the jury's original findings from the verdict form be reinstated and then reduced by the appropriate percentage of comparative fault, on remand the circuit court must also determine the new amount of pre-judgment interest on that reinstated and reduced verdict.